## SCHWAB *v.* BERGGREN.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 977. Argued January 21, 26, 1892. — Decided February 29, 1892.

At common law it was deemed essential in capital cases that inquiry be made of the defendant before judgment was passed whether he had anything to say why sentence of death should not be pronounced upon him; thus giving him an opportunity to allege any ground of arrest, or to plead a pardon if he had obtained one, or to urge any legal objection to further proceedings against him. And if the record did not show that such privilege was accorded to him the judgment would be reversed.

This rule, however, does not apply to an appellate court, which, upon review of the proceedings in the trial court, merely affirms a final judgment, without rendering a new one. Due process of law does not require his presence in the latter court at the time the judgment sentencing him to death is affirmed.

Neither the statutes of Illinois nor due process of law, require that the accused, upon the affirmance of the judgment sentencing him to death, shall be sentenced anew by the trial court. The judgment is not vacated by the writ of error; only its execution is stayed pending proceedings in the appellate court.

The time and place of executing the sentence of death is not strictly part of the judgment unless made so by statute.

The governor of Illinois has power under the constitution of that State, to commute the punishment of death to imprisonment for life in the penitentiary.

THE case is stated in the opinion.

*Mr. Benjamin F. Butler* and *Mr. M. Salomon* for appellant.

*Mr. George Hunt,* Attorney General of the State of Illinois, (with whom was *Mr. E. S. Smith* on the brief,) for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an appeal from an order sustaining a demurrer to a petition by the appellant for a writ of *habeas corpus,* and dismissing that petition.

In the case of *People of Illinois* v. *August Spies, Michael Schwab, Samuel Fielden et al.* — which was an indictment for murder in the Criminal Court of Cook County, in the State of Illinois — an order was entered, October 9, 1886, as follows:

"The People of the State of Illinois ⎱ 18803.  Indictment for
          *v.*                      ⎰          murder.
  "Michael Schwab, Impl'd, etc. ⎰

"This day again come the said people, by Julius S. Grinnell, State's attorney, and the said defendant, as well in his own proper person as by his aforesaid counsel, also comes; and now, neither the said defendant nor his counsel for him saying anything further why the judgment of the court should not now be pronounced against him on the verdict of guilty heretofore rendered to the indictment in this cause —

"Therefore it is ordered and adjudged by the court that the said defendant, Michael Schwab, be taken from the bar of the court to the common jail of Cook County, from whence he came, and be confined in said jail in safe and secure custody until the third day of December, A.D. 1886, and that on said third day of December, between the hours of ten

o'clock in the forenoon and two o'clock in the afternoon, the said defendant, Michael Schwab, be by the sheriff of Cook County, according to law, within the walls of said jail or in a yard or enclosure adjoining the same, hanged by the neck until he is dead, and the said sheriff is hereby required and commanded to take the body of the said defendant, Michael Schwab, and confine him in the said common jail of Cook County in such safe and secure custody, and upon the said third day of December, A.D. 1886, between the hours of ten o'clock in the forenoon and two o'clock in the afternoon, to hang the said defendant, Michael Schwab, by the neck until he be dead."

The case was carried, by writ of error, to the Supreme Court of Illinois, where the following order was made September 14, 1887, one of the regular days of that court:

" August Spies, Michael Schwab, Samuel Fielden, Albert R. Parsons, Adolph Fischer, George Engel, Louis Lingg, and Oscar W. Neebe

*v.*

" The People of the State of Illinois.

59 A. D. Error to the Criminal Court of Cook County

" On this day came again the said parties, and the court having diligently examined and inspected, as well the record and proceedings aforesaid as the matters and things therein assigned for error, and being now sufficiently advised of and concerning the premises, for that it appears to the court now here that neither in the record nor proceedings aforesaid, nor in the rendition of the judgment aforesaid, is there anything erroneous, vicious, or defective, and that that record is no error :

" Therefore it is considered by the court that the judgment aforesaid be affirmed in all things as to each and every of said plaintiffs in error and stand in full force and effect, notwithstanding the said matters and things therein assigned for error.

" And it is further ordered by the court that the eleventh day of November, A.D. 1887, be, and the same is hereby, fixed

as the time when the sentence of death, pronounced upon said plaintiffs in error, August Spies, Michael Schwab, Samuel Fielden, Albert R. Parsons, Adolph Fischer, George Engel, and Louis Lingg, by the criminal court of Cook County, Illinois, shall be executed.

"And it is further ordered by the court that the sheriff of Cook County, Illinois, be, and he is hereby, ordered and directed to carry into execution the sentence by the Criminal Court of Cook County, Illinois, of the defendants in the indictment, August Spies, Michael Schwab, Samuel Fielden, Albert R. Parsons, Adolph Fischer, George Engel, and Louis Lingg, on Friday, the eleventh day of November next (November 11, A.D. 1887,) between the hours of ten o'clock in the forenoon and four o'clock in the afternoon of that day.

"And it is further considered by the court that the said defendants in error recover of and from the said plaintiffs in error their costs by them in this behalf expended, and that they have execution therefor."

On the day preceding that fixed for the execution the governor of Illinois commuted the sentence of death imposed upon Schwab, to imprisonment in the penitentiary for life, in consequence of which the sheriff of Cook County delivered him on the 12th of November, 1887, to the warden of the penitentiary at Joliet, Illinois, in which institution he has ever since been confined at hard labor. On the same day of the commutation of the sentence the governor addressed to the warden a communication, in which it was said: "The commutation papers will this day be forwarded by me to the sheriff of Cook County, Illinois, directed to Canute R. Matson, sheriff of said county, with instructions to him to deliver said Fielden and Schwab into your custody as warden of the Illinois penitentiary, at Joliet, together with the commutation papers in each case. You will receive the said Samuel Fielden and Michael Schwab, as warden of said penitentiary, into your custody, whereby under said commutation you are hereby directed to receive said Samuel Fielden and Michael Schwab into your custody as warden of said penitentiary, and to confine the said Fielden and Schwab in said penitentiary, in safe and secure custody

and keeping, at hard labor during the term of their natural
lives. The said commutation papers would have been sent, as
is usual, directly to you. I desired, however, that the sheriff
might temporarily have said papers in his possession on the
day when said Fielden and Schwab, with several other per-
sons named in said sentence which was pronounced against
them, were to be executed on the 11th day of November, 1887,
that he might be able by said papers to show why the sentence
of said Samuel Fielden and Michael Schwab was not carried
into execution, as pronounced by said court against them."

It is averred in the petition for the writ of *habeas corpus*
that the recital in the judgment of the Supreme Court of Illi-
nois, that " on this day came again the said parties," was and
is false and untrue, in that the petitioner was, before and at
the date of said order, and up to and including November 12th,
1887, imprisoned, continuously, in the county jail of Cook
County, and was not, when the order of September 14th, 1887,
was made, present personally or by counsel in that court, nor
had he notice, personally or by counsel, to be present there on
that day.

The petitioner claimed that his detention in the penitentiary,
and his confinement there at hard labor, were in violation of
the Constitution and laws both of Illinois and the United
States.

The demurrer to the petition for the writ admits that the
judgment of the Supreme Court of Illinois of September 14th,
1887, was rendered in the absence of both the appellant and
his counsel, and without notice to either that the case would be
disposed of at that time. It is, therefore, contended by the
appellant that the judgment was void, as not being that due
process of law required by the Constitution of the United
States, where life or liberty is involved.

At common law, it was deemed essential in capital cases,
that inquiry be made of the defendant, before judgment was
passed, whether he had anything to say why the sentence of
death should not be pronounced upon him ; thus giving him
an opportunity to allege any ground of arrest, or to plead a
pardon, if he had obtained one, or to urge any other legal ob-

jection to further proceedings against him.    This privilege was deemed of such substantial value to the accused, that the judgment would be reversed if the record did not show that it was accorded to him.    *Ball* v. *United States,* 140 U. S. 118, 129 ; 1 Chitty's Crim. Law, 699, 700 ; *Rex* v. *Geary,* 2 Salk. 630 ; *King* v. *Speke,* 3 Salk. 358 ; *Anonymous,* 3 Mod. 266 ; 1 Archbold's Crim. Prac. & Plead. (Pomeroy's edition) 577, 578.    And it has been so ruled in the courts of some of the States.    *Hamilton* v. *Commonwealth,* 16 Penn. St. 129, 133 ; *Messner* v. *People,* 45 N. Y. 1, 5 ; *James* v. *State,* 45 Mississippi, 572, 579 ; *Crim* v. *State,* 43 Alabama, 53, 56 ; *Perry* v. *State,* 43 Alabama, 53 ; *State* v. *Jennings,* 24 Kansas, 642, 659 ; *Keech* v. *State,* 15 Florida, 591, 609 ; *Grady* v. *State,* 11 Georgia, 253, 257 ; *Safford* v. *The People,* 1 Parker's Crim. Rep. 474, 476.

But this rule of the common law, as the authorities clearly show, applied to the court of original jurisdiction which pronounced the sentence, and not to an appellate court, which, upon review of the proceedings in the trial court, merely affirms the final judgment — no error having been committed to the prejudice of the accused — without rendering a new judgment.    The entire argument, on behalf of the appellant, assumes that the Supreme Court of Illinois pronounced a sentence of death upon him.    But such is not the fact.    The sentence of death, by hanging, was pronounced by the Criminal Court of Cook County, October 9th, 1886, "neither the said defendant nor his counsel for him saying anything further why the judgment of the court should not now be pronounced against him on the verdict of guilty heretofore rendered to the indictment in this cause."    The execution of that sentence having been stayed by the prosecution of a writ of error, with supersedeas, the Supreme Court of the State, upon examination of the matters assigned for error, affirmed the judgment in all things, and (the day originally fixed for the execution having passed) fixed November 11th, 1887, as the day for carrying into execution "the sentence by the criminal court of Cook County."    What that court did was in strict conformity with the Criminal Code of Illinois relating to prosecutions by

indictment for capital offences, which provides that "if the judgment is affirmed, the Supreme Court shall, by order, fix the time when the original sentence of death shall be executed, a copy of which order shall be sufficient authority to the sheriff for the execution of the prisoner at the time therein specified;" and that "if the judgment is affirmed, the Supreme Court shall direct the court in which the original sentence was rendered to carry the same into effect, and shall give judgment against the plaintiff in error for costs, and execution may issue therefor from the Supreme Court." Rev. Stats. Illinois, c. 38, Crim. Code, §§ 459, 465, Div. XV.

Numerous authorities have been cited for the appellant in support of the general common law rule that the accused must be present when the judgment against him is pronounced; but they fall far short of establishing the contention that due process of law required his personal presence in the Supreme Court of Illinois at the time the order was entered affirming the judgment by which he was sentenced to death. No case is cited, and we are aware of no well-considered case, which supports that contention. The personal presence of the accused, from the beginning to the end of a trial for felony, involving life or liberty, as well as at the time final judgment is rendered against him, may be, and must be assumed to be, vital to the proper conduct of his defence, and cannot be dispensed with. This court in *Hopt* v. *Utah*, 110 U. S. 574, 579, after observing that the public has an interest in the life and liberty of the accused, and that neither can be lawfully taken except in the mode prescribed by law, said: "That which the law makes essential in proceedings involving deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods. The great end of punishment is not the expiation or atonement of the offence committed, but the prevention of future offences of the same kind. 4 Bl. Com. 11. Such being the relation which the citizen holds to the public, and the object of punishment for public wrongs, the legislature has deemed it essential to the protection of one whose life or liberty is involved in a

prosecution for felony, that he shall be personally present at the trial, that is, at every stage of the trial when his substantial rights may be affected by the proceedings against him. If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the Constitution." See *Harris* v. *People,* 130 Illinois, 457, 459. But neither reason nor public policy require that he shall be personally present pending proceedings in an appellate court whose only function is to determine whether, in the transcript submitted to them, there appears any error of law to the prejudice of the accused; especially, where, as in this case, he had counsel to represent him in the court of review. We do not mean to say that the appellate court may not, under some circumstances, require his personal presence; but only that his presence is not essential to its jurisdiction to proceed with the case.

In *Fielden* v. *People,* 128 Illinois, 595, 601, the Supreme Court of Illinois, speaking by Mr. Justice Schofield, after showing that the rule at common law, to which we have adverted, could have no application to that court, which acts and decides only upon the record made in the trial court, said: " We may add, moreover, it has not been the practice of this court, from its organization to the present time, to have the plaintiff in error in a criminal case actually present in court at the hearing and when final judgment is given; and it is clear, from the different provisions of the statute, that it not only does not provide for their presence, but it contemplates that they will not be present."

In *Donnelly* v. *State,* 2 Dutcher (26 N. J. Law) 463, 471,— which was a case of conviction of murder,— it was said : " If the presence of the prisoner is necessary in cases of murder to conduct a writ of error, or to receive the judgment of the court, it is, upon the principles of the English law, equally so in all other cases of felony or crimes above misdemeanors. But upon examining the precedents, we do not find a single case, where, upon writ of error, the defendant was either brought into this court or prosecuted the writ in person." After referring to several previous cases, the court proceeded:

" We think it must be considered as settled by the practice in this State, that in proceedings upon writ of error the personal presence of the prisoner in court is not a technical necessity; that he appears by counsel, errors are assigned by counsel, and judgment may be pronounced in the defendant's absence."

In *State* v. *Overton*, 77 Nor. Carolina, 485, which was, also, a case of murder, a judgment of conviction was affirmed by the Supreme Court of North Carolina, and the decision was certified to the court of original jurisdiction that the latter might proceed to judgment and execution. The prisoner objected to any judgment being rendered against him, because he had been denied his constitutional right of being present in the Supreme Court of North Carolina when his case was there argued and determined. The court said: " This objection is founded upon an erroneous idea of a criminal trial, and of the power and duty of this court in such a case brought before it by appeal. The constitution provides that a defendant in a criminal action shall be informed of the accusation against him, and shall have the right to confront the accusers and witnesses with other testimony, and shall not be convicted except by the unanimous verdict of a jury of good and lawful men in open court as heretofore used. *That* is his *trial*. This of course implies that he shall have a right to be present. If he complains of any error in his trial, the record of the trial is transmitted to this court. *Here*, are no ' accusers,' no ' witnesses,' and no 'jury'; but upon inspection of the record this court decides whether there was error in the trial, and without rendering any judgment, orders its decision to be certified to the court below. It has never been understood, nor has it been the practice that the defendant shall be present in *this* court; nor is he ever 'convicted' here." To the same effect are *State* v. *Leah*, 90 Nor. Carolina, 655; *State* v. *Jacobs*, 107 Nor. Carolina, 772. See also *People* v. *Clark*, 1 Parker's Criminal Rep. 360, 367.

We are of opinion that the practice prevailing in Illinois, New Jersey and North Carolina, as shown in the above cases, is that which is pursued, and has always been pursued, in the

different States, as well as at common law. It is not only consistent with "due process of law" — giving these words the most liberal interpretation — but is founded on a wise public policy.

Nor is the question affected by the fact that the Supreme Court of Illinois, under express authority conferred by statute, fixed the time when the punishment prescribed by the judgment which it affirmed should be inflicted. Neither the statute nor due process of law required that the accused should, upon the affirmance of the judgment, be sentenced anew by the trial court to suffer the punishment of death, or that he should be present when the day was fixed by the appellate court for carrying the original sentence into execution. The judgment prescribing that punishment was not vacated by the writ of error; only its execution was stayed pending proceedings in the appellate court. Besides, it is well settled that the time and place of execution are not, strictly, part of the judgment or sentence, unless made so by statute. *Holden* v. *Minnesota*, 137 U. S. 483, and authorities there cited; 1 Chitty's Crim. Law, 780, 787; *Costley* v. *Commonwealth*, 118 Mass. 32.

It is said in respect to the commutation by the governor of his sentence to imprisonment in the penitentiary for life that it was of no effect if the judgments were void. But the judgments are held not to be void. It is proper, however, to say that the constitution of Illinois expressly confers upon that officer the power " to grant reprieves, commutations and pardons, after conviction, for all offences." Art. 5, sec. 13. Of course, therefore, the governor had authority to commute the punishment of death to imprisonment for life in the penitentiary. And by the statutes of Illinois, the penitentiary at Joliet is made the general penitentiary and prison of that State for the confinement and reformation, as well as for the punishment of all persons sentenced by any court of competent jurisdiction in that State for the commission of crime the punishment of which is confinement in the penitentiary, "in which the person so sentenced shall be securely confined, employed at hard labor." Rev. Stats. Illinois, c. 108, sec. 1. So that the detention of the appellant by the warden of the penitentiary is

not in violation of any rights secured to him by the Constitution of the United States.

There are no other questions in the case which require to be noticed, and the judgment must be

*Affirmed.*