THE PEOPLE *v.* RIVERA *alias* PANCHITO.

APPEAL from the District Court of Guayama.

No. 23.—Decided December 9, 1905.

INFORMATION—DISMISSAL.—The provisions of section 448 of the Code of Criminal Procedure are not applicable to those cases where by reason of the fact that the judgment of conviction has been reversed on appeal, a new trial is ordered to be held.

CRIMINAL PROSECUTION—POWERS OF ATTORNEY GENERAL—SPECIAL FISCAL.—The Attorney General of Porto Rico has the power to appear personally in all criminal prosecutions pending before the Insular courts or to appoint special *fiscals* to appear therein as his representatives, or he may transfer the *fiscal* of one district to another district and order him to prosecute any case pending therein.

EVIDENCE—CONFESSION OF DEFENDANT—HEARSAY EVIDENCE.—The testimony of witnesses in regard to a confession of crime made to them by the accused cannot be regarded as hearsay evidence, but, on the contrary, it is direct evidence of the acts of the accused and perfectly admissible.

ID.—CASES IN WHICH A CONFESSION IS ADMISSIBLE.—The only objections which a defendant may urge against the admission of testimony in regard to à confession of his crime are that the defendant was under duress at the time of making such confession, or that he had been induced to confess by reason of hopes or promises held out to him.

ID.—IRRELEVANT QUESTIONS—OPINIONS OF WITNESSES.—Questions propounded to a witness, for the purpose of obtaining his opinion upon certain facts connected with the case, are inadmissable and should be excluded as impertinent, inasmuch as upon the jury and not upon the witnesses rests the obligation of making deductions in regard to the facts established before it.

ID.—WITNESSES.—Witnesses do not need to have any professional title whatever in order to testify in a criminal prosecution in regard to facts which come within their personal knowledge.

APPEAL—NEW TRIAL—EVIDENCE—BILL OF EXCEPTIONS—STATEMENT OF FACTS.—In order that the Supreme Court may consider and decide on appeal a motion for a new trial based on the ground that the verdict is contrary to the law and the facts, it is necessary that the evidence introduced at the trial be submitted to the consideration of the court, by means of a statement of facts or bill of exceptions, and in the absence thereof it will be presumed that the verdict, as well as the judgment, is correct and that they conform to the law.

ID.—INSTRUCTIONS OF THE COURT TO THE JURY.—Where the accused has made no objection to the instructions given by the court to the jury, he will be deemed to have waived the same, and in the absence of a bill of exceptions or statement of facts setting out the evidence introduced supporting the allegation that such instructions are erroneous, the same will be deemed to be correct unless it appears that whatever may have been the facts proved at the trial such instructions were manifestly erroneous.

ID.—ALLEGED ERRORS SHOUED BE SHOWN IN THE RECORD.—It is a general principle of law that a party alleging the existence of errors in the proceedings of a court must show the same to exist by reference to the record.

ID.—MURDER IN THE FIRST DEGREE—ROBBERY.—Where the classification of murder in the first degree is based on the fact that murder has been committed in the perpetration of a robbery, the court should define the crime of robbery and instruct the jury with respect thereto.

ID.—SENTENCE OF DEATH.—The phrase ''God have mercy on your soul'' used by a judge in condemning an accused to the death penalty is not improper, nor can it in any wise be considered to constitute a material error which would justify a reversal of the judgment, and the trial judge may use this formula or not in his discretion.

ID.—ERRORS WHICH DO NOT PREJUDICE THE SUBSTANTIAL RIGHTS OF THE
ACCUSED.—Where an inferior court has not.committed any fundamental error
which might prejudice the substantial rights of the accused and thereby war
rant the reversal of the judgment appealed from, the same should be affirmed.

The facts are stated in the opinion.

*Mr. Diaz Navarro* for appellant.

*Mr. Rossy, fiscal,* for The People.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The appeal presented brings this case before us for the
second time. The judgment rendered on the first trial in the
district court was considered and reversed for informality in
the verdict on the 25th of June, 1904. A new trial was had,
on the 30th of March, last, in conformity with the judgment of
this court, resulting, for the second time, in a verdict and
judgment finding the defendant guilty of murder in the first
degree, and he was again sentenced to death, on the 6th day
of April, 1905; and from this judgment appealed to this
court. The transcript was filed here on the 16th of May, last,
and the appellant, having no counsel, and being convicted in
a capital case, this court, as required by law (Act of 9th
March, 1905), assigned him an attorney for his defense. Hon.
Herminio Diaz Navarro was selected for this arduous and
unrequited task, and gave the case careful attention, making
an able and vigorous defense. Of course, he had to take the
record as it came from the court below and make the best of
it. The appeal was heard on the 20th of October, last, on
briefs and oral arguments of counsel on both sides.

The case appears to have been tried with great care in
the court below, and every precaution was taken by counsel
for the accused to protect his rights. A bill of exceptions was
prepared and signed in the trial court, carefully following
the statute applicable thereto and reserving nine points of de-
fense for consideration here. Some of these have been dis-
regarded by the eminent counsel for the prisoner; and other
supposed errors in the record, not reserved by the bill of ex-
ceptions, have been urged by him upon the attention of this

court. We will, in view of the importance of the case, examine
all the points presented, whether raised in the court below
or in this court, varying the order of consideration in such
a manner as appears to us most natural and convenient. Had
counsel for the prisoner in the district court read with atten-
tion the opinion of this court in the former hearing, some of
the points made by him would probably have been omitted
and much availing labor been thereby avoided.

1. The same objection is made to the information in this
court that was presented thereto on the former trial both in
the court below and in this court. This is that the informa-
tion charges more than one offense. As the matter was con-
sidered at length by us when the case was here in June of last
year, it is not necessary to do more at present, in regard to
this question, than to refer to the opinion then rendered. (See
Criminal Jurisprudence of 1904, p. 55.) The information
was then held to be sufficient; it is the same document still,
and our opinion in regard to it has not changed. It is not sub-
ject to the objections made.

2. The bill of exceptions shows that on the trial of this
case, after the jury was sworn, the defendant presented to the
district court a motion in writing seeking to dismiss the prose-
cution, founding his claim on section 448, paragraph 2, of the
Code of Criminal Procedure, because the trial had not been
postponed upon his application, and he was not brought to
trial within one hundred and twenty days after the decision
of the Supreme Court granting him a new trial, in June, 1904.

The judge of the trial court overruled the motion, stating
that section 448 was not applicable on the second trial, and
showing that the motion for dismissal was made after the jury
had been impaneled and sworn, citing decisions from the Su-
preme Court of California rendered under section 1382 of the
Penal Code of California, which is essentially identical with
section 448 of the Code of Criminal Procedure in Porto Rico.
The ruling of the trial court was correct, and is sustained by

an able opinion delivered in the case of *The People* v. *Hawkins,* 127 Cal., page 373, which says:

"On December 2, 1898, an information was filed by the district attorney, in the court below accusing defendant of the crime of assault with intent to murder, specifying also that the assault was committed with a deadly weapon. Section 1382 of the Penal Code contains the following provision: 'The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed in the following cases * * * 2. If a defendant whose trial has not been postponed upon his application is not brought to trial within sixty days after the finding of the indictment, or filing of the information.' January 13th, 1899, the court made an order setting defendant's case for trial on February 3d, following. On said February 3d defendant was present in court with his counsel and announced that he was ready for trial; a jury was then impaneled and sworn to try the case; whereupon defendant moved the court to dismiss the action and discharge him, on the ground that he had not been brought to trial within sixty days after the information was filed. The court denied the motion; the trial proceeded and resulted in a verdict of guilty of an assault with a deadly weapon, upon which sentence of imprisonment was pronounced.

"There is no duty incumbent on the court to order dismissal under said section 1382 unless the defendant demands it (*Ex parte Fennessy,* 54 Cal., 101); so that the right, like other statutory privileges of the accused which do not affect the jurisdiction of the court, may be waived. It is well settled that impaneling of the jury is part of a trial (*Silcox* v. *Lang,* 78 Cal., 118); the legal jeopardy of the defendant has attached when a jury has been 'charged with his deliverance,' and the jury stands thus charged when its members have been impaneled and sworn. (Cooley's Constitutional Limitations, 6th Ed., 399.) When, therefore, the defendant here moved for dismissal he had been 'brought to trial,' and was upon trial, without previous objection that the limit of sixty days had expired. If he could then raise the objection for the first time, he could raise it as well on the announcement of the verdict, or at any other stage of the trial. We are satisfied that the statute never was designed for such uses, and must hold that defendant waived its benefit (if he was entitled thereto) by failure to claim it in proper season. The following cases tend to sustain this conclusion: *People* v. *Bennet,* 114 Cal., 56, 58; *Polack,* v. *Gurnee,* 66 Cal., 266; *People* v. *Romero,* 18 Cal., 89; *People* v. *Johnson,* 104 Cal., 418."

Let us compare the Porto Rican statute on the same sub-
ject. Section 448 of the Law of Criminal Procedure, in its
second paragraph provides:

"If a defendant, whose trial has not been postponed upon his
application, is not brought to trial within one hundred and twenty
days after the filing of the information, the court, unless good cause
to the contrary is shown, shall order the prosecution to be dismissed."

This section has no reference to a case after it has been
carried to the Supreme Court and there reversed, as clearly
appears from the reading of the law itself, which requires the
trial to be had within one hundred and twenty days after the
filing of the information. Of course, this would be imprac-
ticable after a case had been carried to the highest court on
appeal, and there is no authority for inserting—as appellant,
in effect, seeks to do—in place of "after the filing of the in-
formation" the words "after the granting of a new trial by
the Supreme Court." If it had been the intention of the
Legislature to have made any provision for a case like this
at bar, that body would doubtless have added another para-
graph to the law clearly expressing that intention. It is un-
necessary to go further into the discussion of this point, as
it is definitely settled by the California decision above quoted
which is in accordance with reason and justice.

3. One of the principal objections made on the trial of this
case in the court below, and urged with great earnestness in
the Supreme Court is that Mr. Campillo, the district attor-
ney *(fiscal)* of the San Juan district, had no authority to as-
sist in the prosecution of this case in the District Court at
Guayama, but that this duty devolved entirely and exclusively
upon the district attorney of that district. On the trial of
the cause, as shown by the bill of exceptions, this objection
was properly made on the 30th of March, before the jury was
impaneled, and prior to the commencement of the trial. The
attorney for the defendant presented, as the legal grounds
for his objections, sections 64 and 74 of the Political Code,

the law of the 13th of March, 1894, and section 95 and 269 of the Code of Criminal Procedure. The *fiscal* opposed the motion, basing his opposition on section 235 of the Code of Criminal Procedure, and alleging that he had a commission from the Honorable Governor of Porto Rico and a verbal order from the Assistant Attorney General to take part in this trial. He afterwards presented a communication from the Governor to the same effect. The defense, in reply, alleges besides that the nomination made by the Governor could not be accepted, because in these matters the Attorney General is the only functionary who, according to law, has authority to make such a nomination. The court overruled the motion of the defense, and permitted the *fiscal* of the District Court of San Juan to appear and take part in the prosecution. To this action of the court the defendant duly excepted. The same line of argument as that just outlined was followed in this court by the able counsel who was appointed to defend the case here.

It is true by the statutory laws of Porto Rico that the district attorney of the district in which the prosecution is conducted has charge of the prosecution, and it is generally his duty to attend to all such matters; but the Attorney General has authority, given him clearly by the statute, to intervene at any time in such prosecutions. Of course, this authority being conferred, the method of his intervention is left to the Attorney General, and he can intervene personally or by means of an appointee. Another section of the statute expressly authorizes him, where the district attorney of the district is not present at the trial, to appoint a special district attorney to conduct the prosecution. (Code Crim. Pro., sec. 269.) Under the Organic Act, section 21, the Attorney General is made the chief law officer of the Island, and has all the powers, and is required to discharge all the duties, provided by law for an attorney of a Territory of the United States, in so far as the laws prescribing the same are not locally inapplicable; and he is also required to perform such

other duties as may be designated by law, and make such reports, through the Governor, to the Attorney General of the United States as that officer may require; such reports to be annually transmitted to Congress. (See the Organic Act of Porto Rico, sec. 21, p. 23, Rev. Stats.)

Mr. Campillo, the *fiscal* whose intervention was objected to, is the regularly constituted and duly appointed *fiscal* of the district of San Juan. He was the *fiscal* of the district of Humacao at the time this information was presented, Guayama being at that time a portion of the Humacao district. He prepared the information and prosecuted the case on the former trial before the district court, and was perfectly familiar with all the facts and circumstances of the crime, and with the law bearing on the same. Doubtless for these reasons the Attorney General thought proper to send him to Guayama, out of his district, to assist the *fiscal* of that district in the prosecution of such an important criminal case, involving the life of the accused, and the enforcement of the law against murder. Under the Organic Act, and the Statutes of Porto Rico, we believe it clear that the Attorney General had such authority and that aside from the commission of the Governor, which Mr. Campillo held, the verbal order of the Assistant Attorney General was sufficient authority for him to apear in this case and take part in the prosecution.

Reference is made, in this connection, in addition to the authorities heretofore cited, to an act providing for the appointment of district *fiscals,* defining their duties, and for other purposes, approved on the 10th of March, 1904. (Laws of 1904, pages 122-123.) By section 3 of that act it is the duty of every district attorney or *fiscal* to prosecute in his district all delinquents for crimes and offences cognizable under the authority of The People of Porto Rico, and all civil actions in which The People of Porto Rico are concerned; and he is required to perform all other duties conferred upon him by law, and to execute any commission of the Attorney General with which he may be intrusted. This section alone would

authorize any *fiscal* designated by the Attorney General to go out of his own district into another district and assist in the prosecution of a murder case there pending. Such authority and discretion is wisely confided to the chief law officer of the Insular Government and in this case they were wisely exercised in furtherance of justice, without infringing on the rights of the accused. (See opinion of this court in *People of Porto Rico* v. *Aponte,* decided November 11, 1905, and *People of Porto Rico* v. *Rivera,* decided November 21, 1905.)

4. In the fourth and sixth paragraphs of the bill of exceptions the defendant makes objections to the testimony of the witnesses Carbo and Lugo Viñas, on the ground that their evidence was hearsay. They testified as to confessions made to them by the accused; and this same point was presented and considered by this court at the former hearing of this case. Confusion seems still to exist in the minds of counsel between the evidence given by witnesses concerning confessions made by the accused and hearsay evidence properly so-called. As we said on a former trial in regard to this matter:

"The testimony of witnesses who detailed to the court the confessions of the defendant to them cannot be considered as hearsay, but was direct evidence of the acts of the defendant, which can be counted against him on the trial. Should the defendant wish to exclude confessions which are proposed to be introduced against him, he should bring them within one of the exceptions laid down by the law as expounded by the elementary writers; that is to say, he should show that he was under duress, or that he was acting under duress or that he was acting under the influence of hopes or promises held out to him in the event of making a confession." (*People of Porto Rico* v. *Francisco Rivera,* opinion rendered 25th of June, 1904.)

See also the opinion of this court in the case of *The People of Porto Rico* v. *Eligier and another,* decided on the 20th of November, 1905.

The references made by defendant's counsel in his oral argument and in his brief, to the cases of *Sexton* v. *Sexton,*

56 Cal., 426, and *Carroll* v. *Stork,* 57 Cal., 367, apply to hearsay evidence only, and in civil cases; hence they cannot be considered as authorities in the case at bar.

Of course, hearsay evidence is not admissible against a defendant in any case, but confessions are not hearsay. Mr. Greenleaf, in his excellent work on Evidence, thus describes hearsay evidence:

"*Section 99.*—The term 'hearsay' is used with reference to that which is written, as well as to that which is spoken; and, in its legal sense, it denotes that kind of evidence which does not derive its value solely from the credit to be given to the witness himself, but rests also, in part, on the veracity and competency of some other person. Hearsay evidence, as thus described, is uniformly held incompetent to establish any specific fact, which, in its nature, is susceptible of being proved by witnesses who can speak from their own knowledge. That this species of testimony supposes something better, which might be adduced in the particular case, is not the sole ground of its exclusion. Its extrinsic weakness, its incompetency to satisfy the mind as to the existence of the fact, and the frauds which may be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible." (1 Greenleaf on Evidence, Sec. 99.)

The substance of this section, or at least a part of it, appears in an opinion of Chief Justice Marshall in the case of *Mima Queen* v. *Hepburn,* 7 Cranch, 290; and the same is quoted with approval by the Supreme Court of the United States, speaking through Mr. Justice Harlan, in the case of *Hopt* v. *Utah,* reported in 110 U. S., 581.

In the former opinion on this case above referred to, we quoted at length on the subject of confessions of guilt from Cooley on Constitutional Limitations, and reference is there also made to Greenleaf on Evidence. (See Jur. Crim. *de* 1904, pp. 56, 57, 58, 59 and 60.) The latter eminent writer in his work on Evidence treats the subject as follows:

"Section 214.—Weight of confessions. But here, also as we have before remarked in regard to admissions, the evidence of verbal confessions of guilt is to be received with great caution. For, besides

the danger of mistake, from the misapprehension of witnesses, the misuse of words, the failure of the party to express his own meaning, and the infirmity of memory, it should be recollected that the mind of the prisoner himself is oppressed by the calamity of his situation, and that he is often influenced by motives of hope or fear to make an untrue confession. The zeal, too, which so generally prevails to detect offenders, especially in cases of aggravated guilt, and the strong disposition, in the persons engaged in pursuit of evidence, to rely on slight grounds of suspicion, which are exaggerated into sufficient proof, together with the character of the persons necessarily called as witnesses, in cases of secret and atrocious crime, all tend to impair the value of this kind of evidence, and sometimes lead to its rejection, where, in civil actions, it would have been received. The weighty observation of Mr. Justice Foster is also to be kept in mind, that 'this evidence is not, in the ordinary course of things to be disproved by that sort of negative evidence, by which the proof of plain facts may be, and often is, confronted.'

"Section 215.—Subject to these cautions in receiving and weighing them it is generally agreed that deliberate confessions of guilt are among the most effectual proofs in the law. Their value depends on the supposition that they are deliberate and voluntary, and on the presumption that a rational being will not make admissions prejudicial to his interest and safety, unless when urged by the promptings of truth and conscience. Such confessions, so made by a prisoner to any person, at any moment of time, and at any place, subsequent to the perpetration of the crime, and previous to his examination before the magistrate, are, at common law, received in evidence as among proofs of guilt. Confessions, too, like admissions, may be inferred from the conduct of the prisoner, and from his silent acquiescence in the statements of others, respecting himself, and made in his presence; provided they were not made under circumstances which prevented him from replying to them. The degree of credit due to them is to be estimated by the jury under the circumstances of each case. Confessions made before the examining magistrate, or during imprisonment, are affected by additional considerations." (1 Greenleaf on Evidence, Secs. 214 and 215.)

See also *People* v. *McCrea*, 32 Cal., 98; *Com.* v. *Sanborn*, 116 Mass., 61; *State* v. *Brown*, 48 Iowa, 382; *State* v. *Smith*, La. Ann. Pt., 1457; and *Campbell* v. *State*, 55 Ala., 70; and

authorities cited under the word "confession" in 1 Bouvier's Law Dictionary pp. 387 and 388.

As the evidence detailed by the witnesses Carbo and Lugo Viña could not be considered as hearsay, and as the confessions testified to by them were not brought within the exceptions laid down by the elementary writers above quoted, as was decided by the courts herein mentioned, we must also hold that this objection on the part of the accused to the evidence of his confessions introduced against him, cannot be considered as well founded. Such evidence is plainly admissible under all the rules of law governing such cases.

5. The fifth item in the bill of exceptions presented in the court below is to a question propounded to Carbo by defendant's counsel and ruled out by the court. The witness Carbo had testified that the accused had said that four persons had invited him, the accused, on the day of the event, to go to a ball at Arroyo, and that before going they had given him something to drink; and at this juncture defendant's counsel asked the witness if these persons, whom the accused had mentioned, were persons who, by their antecedents, the witness could judge to be capable of taking part in any crime. This question was clearly inadmissible, because the answer only developed the opinion of the witness as to the character of the persons mentioned, who had not been sufficiently identified with the case; and his opinion, even if it were permitted to go before the jury, could not properly be considered by them, either for or against the accused. The jury should form their own opinions from the facts in the case. For this reason, and others plainly apparent, the question was properly excluded. (1 Greenleaf on Evidence, section 441 b; *Evans* v. *People,* 12 Mich., 35; *Bates* v. *Sharon,* 45 Vt., 481.)

6. It was also objected on the trial in the court below that the *practicante* who made the autopsy was permitted to testify in regard to the same, and as to the wounds on the body and other particulars of that nature, the position being taken

by defendant's counsel that none but a regularly qualified physician and graduate of a medical school could properly testify as to such matters. We know of no rule of law which would forbid any man giving evidence of facts within his knowledge. It does not appear that a professional opinion was sought from or given by the *practicante*. No diploma is necessary to qualify a person, having the requisite knowledge, to become a witness on the trial of any criminal case. Laymen have been permitted to testify as to the sanity or insanity of persons on trial, giving the facts, from which the jury might draw their own conclusions on the issues involved. It was clearly permissible, so far as appears from the records, for the *practicante* to testify in regard to the wounds, the appearance of the body, and the other matters which were brought out through him on the trial of this case.

7. It is also strongly urged on behalf of the defendant by his eminent counsel, that a new trial should have been granted; first, because the verdict was contrary to the law and the evidence; and second, for errors in the charge of the court.

The first point cannot be considered by this court, because there is no statement of facts or bill of exceptions in the record which might inform us of what facts were proven on the trial of this case. (See *People of Porto Rico* v. *Eligier et al.,* decided by this court on 20th November of this year.) Unless we have the facts before us we cannot say that the verdict of the jury is contrary to the evidence, nor even contrary to the law, because the law is considered in connection with the evidence, and must be applicable thereto. In the absence of a statement of facts, or a bill of exceptions, showing us what the evidence which contradicted the verdict upon the trial really was, such an objection cannot be considered. There is nothing whatever before us upon which to base a decision in regard to the sufficiency or the effect of the evidence adduced on the trial. Every presumption in favor of the correctness of the judgment of the court below must be indulged by this court, and it is impossible for the accused to show that the

verdict was contrary to the law and the evidence, without showing at least some material portion of the evidence which was put before the jury for their consideration and which might be held to be inconsistent with the verdict.

As far as regards the errors in the charge, the bill of exceptions does not show that the charge was objected to by the accused; nor is any objection otherwise shown. All the instructions asked by the defendant appear to have been given, with the exception of one, which was plainly inadmissible, not being a correct statement of the law in regard to the case. No exception was taken to its refusal by the court and it was not noticed in the oral argument in this court, and all objections to the action of the court may therefore be taken as waived. There being no bill of exceptions embodying the evidence nor statement of facts to be found in the record, the court must regard the charge as correct, unless it appears to be manifestly erroneous under every conceivable state of facts. It is a general principle, very well established, that the party who alleges error in the proceedings of a court must show it by a reference to the record. (*People* v. *Gilbert,* 60 Cal., 112; *People* v. *King,* 27 Cal., 514; *People* v. *Levison,* 16 Cal., 100.)

A careful perusal of the whole charge given by the trial judge shows it to have been full and complete, covering all the branches of the case. He follows carefully the suggestions made in the opinion rendered by this court on the former hearing of this case, in June, 1904. All the degrees of murder were properly defined to the jury, and the same course pursued in regard to the crime of manslaughter. Isasmuch as the information charged and the facts, as far as they can be ascertained showed that the murder of Severo Lorenzo was committed in the perpetration of robbery, the crime of robbery was also explained by the court to the jury. Besides it was this circumstance which was relied upon to render the killing murder in the first degree  (See Penal Code, Section 201.)  This required the crime of robbery to be defined in the

charge of the court. The jury were instructed in regard to the force and effect of circumstantial evidence and the caution with which it should be received. They were also fully informed as to the law in regard to a reasonable doubt, and certainly the charge on this point was as favorable as the accused could have reasonably claimed. It is difficult to see, on rigid scrutiny, any particular in which the accused could point out an error in the charge. For all these reasons it must be held that the motion for a new trial was properly overruled.

8. The distinguished counsel, in his zeal for his client, also presented to this court with great earnestness, an objection to the death sentence pronounced by the court on the defendant, after his conviction, and particularly to the phrase used by the judge, "May God have mercy on your soul." He cites, in support of his objection several decisions of the United States courts (particularly those found in 82 Fed. Rep., 855; 87 Fed. Rep., 172; 101 Fed. Rep., 817; 102 Fed. Rep., 473; 137 U. S., 483; 143 U. S., 442; 146 U. S., 271; 151 U. S., 242). None of these authorities, when carefully examined, support the proposition for which counsel contended. In one case, to wit: *Cross Ex parte,* being an application for *habeas corpus* before the Supreme Court of the United States, reported in volume 146 of the U. S. Reports, on page 272; it appears that this formula was used by the trial court in passing the death sentence. The case was carried to the Supreme Court in one form or another, three times, and this point was never made against the sentence. However, the sentence containing this phrase was approved on each occasion, with full knowledge of its use. All the decisions of courts of last resort go to show that such phrases, when used in sentencing a convict to the extreme penalty of the law, are not properly a part of the sentence. On an analogous question, it is expressly announced by the highest authority, in the opinion rendered in the case of *Schwab* v. *Berggren,* 143 U. S., 451, that it is well settled that the time and place of the execution are not, in a capital

case, strictly a part of the judgment or sentence, unless expressly made so by statute. Mr. Justice Harlan, delivering the opinion of the court, in that case, cites 1 *Chitty*, 780, 787; *Costley* v. *Com.*, 118 Mass., 32; *Holden* v. *Minn.*, 134 U. S., 483. It has been customary from time immemorial, in all English-speaking countries, to use this formula: "May God have mercy on your soul," in passing sentence—death—upon a convict. It has never, so far as I have been able to ascertain, been held to be improper, much less a material error. And as the Statutes of Porto Rico are silent on the subject, the invocation may be used or omitted in the discretion of the trial judge.

9. Finally, in this case reference may be made to an act of the Legislative Assembly of Porto Rico, relating to reversals of judgment in criminal cases, approved on the 30th of May, 1904. (See Laws of P. R. 1904 Special Session, page 10.) That statute says:

"Whenever it appears from the record in any criminal case upon appeal in the Supreme Court, that any requirement of the law has been disregarded by the trial court, the judgment shall not be reversed, unless the error appearing from the record was calculated to injure the rights of either of the parties, and was duly excepted in the trial court; *Provided, however,* That the appellate court may take cognizance of fundamental errors, appearing in the record, although not excepted to, and render such judgment thereon as the facts and the law may require."

There certainly does not appear to be any fundamental error in this case, and reviewing all the alleged errors mentioned in the bill of exceptions, or urged on oral argument, as we have done in the foregoing pages, we con find no error which requires a reversal of the judgment and sentence pronounced upon the accused in the court below. No substantial right was denied him. The trial was fair and impartial, he had the assistance of counsel in the trial court and on the appeal, all the safeguards of the law were thrown around the

defendant, and a jury of his own selection, after due deliberation, found him guilty of murder in the first degree; and this solemn verdict was approved by an able and impartial judge, and sentence of death duly passed upon the prisoner.

For the reasons stated in the foregoing pages the judgment rendered by the District Court of Guayama, on the 6th of April, 1905, condemning the defendant to suffer death, should be affirmed.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernandez, Figueras and Wolf concurred.