**1316**

William Carlyle **TAYLOR**, Petitioner,

v.

**J. D. COX, Superintendent of the Virginia State Penitentiary,** Respondent.

**Misc. No. 445-69-N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Sept. 3, 1970.

Andrew P. Miller, Atty. Gen., Richmond, Va., for respondent.

### MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

Remanded to this court by memorandum decision No. 14,108, filed April 22, 1970, the court entered a further order on July 8, 1970, pursuant to the mandate received and filed on May 15, 1970. The respondent answered on July 16, 1970, and has now produced the transcripts of the state court habeas corpus hearing conducted in 1966. Since the petitioner had filed a later state habeas corpus proceeding, the respondent had incorrectly assumed that only the record of the most recent state habeas proceeding was requested by the federal court when the federal petition was filed.

As reflected by Memorandum Decision No. 14,108, the state court judge entered an order on November 11, 1966, in petitioner's first state habeas proceeding finding as a fact that petitioner was *not* denied his right to appeal and that petitioner was not denied any constitutional rights either prior to or during the course of his trial in 1957. The difficulty is that the transcript had not been submitted in support of this finding.

In his federal petition, petitioner states:

> "Petitioner was not granted a plimeniery [sic] hearing before trial in Goochland County in 1955. The case was not appealed to the Virginia Supreme Court of Appeals as requested by the petitioner. The constitutional rights of the State of Virginia *intitles* me to an appeal from the 30 year sentence imposed not according to law."

The transcripts supporting the findings of the state habeas judge are contained in two volumes. One hearing was in open court on June 27, 1966, the transcript consisting of 158 pages. The other volume is 116 pages in length and contains the depositions of a number of prisoners, as well as others, taken at the Virginia State Penitentiary. It is unnecessary, in the opinion of the court, to review the depositions as they relate solely to an issue of cruel and inhuman punishment which is not presently before the court.

With one minor correction, the Court of Appeals has correctly stated the factual situation with respect to the claims not previously resolved by the district court. The memorandum decision states "The petitioner was already in lawful custody under a prior conviction for a previous murder." While the petitioner was already in lawful custody at the time he killed Isaac *Peart* (as so stated in the indictment, but referred to as *Potts* in the plenary hearing), petitioner's criminal record, while extensive, does not reflect a "previous murder." In all

other respects the Court of Appeals has disposed of the frivolous allegation that petitioner was arrested without a warrant.

█ The respondent concedes that no transcript of the 1957 murder trial[1] is available or can be made available. It is now abundantly clear that the alleged deprivation of the right of an appeal from the 1957 murder conviction was before the state habeas court,[2] and that the findings of that court are amply supported by the record.

The facts are that C. Willard Norwood, a Richmond attorney, was hired by petitioner's father during March 1957 following the homicide which took place on February 14. Although petitioner testified that he only saw his attorney two or three times, and he alleged that this was immediately prior to trial, petitioner testified that he first saw the attorney in March or April. The attorney stated that he made 8 or 10 trips to the State Farm to interview petitioner and interrogate possible witnesses. Petitioner states that the interviews were confined to five or six minutes. The attorney, while maintaining no time record as to the length of any particular interview, testified that no restrictions were imposed by the penal authorities with reference to his interviews and interrogation of petitioner or any other potential witness. The simple fact is that Peart (Potts) and petitioner were in a solitary confinement cell with no one else present. Peart (Potts) was strangled by a rope. Petitioner was then the sole surviving occupant of the cell.

There is no denial of the right of appeal merely because no court reporter was present and no transcript is available. In 1957 there was—and still is—a provision for appeal based upon a narrative summary of the evidence. Of course, in more recent years provision has been made for reporting or recording all felony trials, but this statute was not on the books in 1957.

While there is no claim of ineffective counsel in the federal petition, it was raised in the state petition. Contrary to what the petitioner has intimated, and despite the tendency of some courts to "Monday morning quarterback" the quality of services performed by an attorney many years prior thereto, the evidence discloses that Mr. Norwood took a case which had the potential of capital punishment and ethically built a moral defense predicated upon the bad record of Peart (Potts), thus resulting in 30 years' punishment as fixed by the jury.

The references with respect to an appeal are few in number. For convenience, the page and line references of the state habeas transcript of the proceedings on June 27, 1966, are set forth in the footnote.[2] Of course, the appellate court is at liberty to read the two-volume transcript but, if any other references pertain to an appeal, they have escaped the attention of the district court.

We are not here confronted with the factual situation presented in Nelson v. Peyton, 415 F.2d 1154 (4 Cir., 1969), cert. den. sub nom. Cox v. Nelson, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970). In that case the state prisoner did *not* know that he had a right to appeal. In the present case the petitioner relies upon an alleged statement by the attorney that he, the attorney "was going to appeal this case to the Supreme Court and get me another trial and through this other trial I would be found not guilty." Mr. Norwood could not recall, after nine years, any conver-

---

1. Petitioner alleges that the murder trial was in 1955. The killing occurred on February 14, 1957, and the trial was conducted on June 13–14, 1957. Petitioner also contends that the grand jury returned the indictment on the same day as the trial. The record shows that numerous witnesses were summoned to appear before the grand jury on April 8, 1957, and all evidence points to the fact that the indictment was returned on that date.

2. Petitioner's testimony—p. 13, l. 8 thru p. 14, l. 3. Attorney Norwood's testimony—p. 78, l. 10–19; p. 83, l. 12–25. Clarence Taylor (father of petitioner)— p. 90, l. 7 thru p. 91, l. 7.

sation relative to an appeal and, in answer to a question propounded by petitioner's habeas corpus counsel as to whether Mr. Norwood explained to petitioner his right to appeal, the attorney said:

"I took a moment after the trial was over and what I explained to him I don't know. I do know in the past nine years no communication has ever been received from him or his family for me to appeal the case."

The record is devoid of any suggestion that petitioner did not know that he had a right of appeal. In fact, all intimations are to the contrary. Moreover, with five prior felony charges on his record and having been continuously confined in the penal system since November 30, 1955 (except during three periods when he escaped and on one elopement two felonies were committed), it is ridiculous to say that petitioner did not know of his right to appeal.

Obviously the state habeas judge gave no credence to petitioner's statement that the attorney had agreed to appeal the case. If we assume that petitioner's testimony is false in its entirety, we are then left with a record under which the attorney has no recollection of any conversation relative to an appeal and nothing is affirmatively disclosed as to whether petitioner had an awareness of his right to appeal. We must conclude that he did have such an awareness as otherwise he would have complained that he was not advised of his rights.

Although the opinion in Nelson v. Peyton, *supra,* was applied retroactively as to that particular habeas petitioner, the Court of Appeals does not *specifically* state that it should be so applied to all state cases tried prior to June 25, 1969, the date of the *Nelson* opinion. Assuming arguendo that *Nelson* was to be applied to all state cases tried prior to June 25, 1969, we wonder what vitality *Nelson* now has in light of McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, where the Supreme Court, in discussing confessions given prior to Jackson v. Denno, 378 U.

S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), pointed out that the legal advice given in the pre-*Jackson* days was adequate, even though it may have been erroneous if the case had been tried in the post-*Jackson* days. At best, we interpret *Nelson,* which in itself is a reversal of prior opinions by the same court, as a warning to attorneys representing defendants in state criminal trials that, in the future, advice must be given with respect to appellate rights.

We know of no case decided prior to petitioner's trial on June 13–14, 1957, which has resulted in a state sentence being invalidated solely by reason of the fact that the attorney failed to advise a defendant as to his right of appeal unless, of course, specific inquiry was made of the attorney. To hold otherwise would invalidate hundreds of thousands of state criminal sentences, either on habeas corpus or *coram nobis.*

The language of the court in *Nelson* does suggest that the newly adopted rule by the Fourth Circuit may be hereafter applied retroactively where the opinion states: "While we do not now decide the issue, we note that the rules in right of counsel cases are generally applied retroactively," citing McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968).

There can be little doubt as to the status of the law in 1957. In Lovvorn v. Johnston, 118 F.2d 704 (9 Cir., 1941), cert. den. 314 U.S. 607, 62 S.Ct. 92, 86 L.Ed. 488, the court said:

"The allegation of the appellant with reference to his failure to take an appeal because not advised by counsel, does not invalidate the judgment. The Sixth Amendment does not secure to a defendant a right of appeal, and the failure to have counsel after sentence would not constitute a violation of the Sixth Amendment. * * * The trial ends with the sentence." (Citing Schwab v. Berggren, 143 U.S. 442, 448, 12 S.Ct. 525, 36 L.Ed. 218).

The foregoing was a federal trial and, while the law has been modified since then, there appears no logical basis to

now hold that trials of ancient days are defective. This is not a case where no attorney represented the petitioner; in fact the attorney was employed by petitioner's father. While we concede that this fact, standing alone, has no great weight, we think it clear that it aids in the argument that the court-invoked rule in *Nelson* should not be accorded retroactive application.

As recent as King v. Wainwright, 368 F.2d 57 (5 Cir., 1966), cert. den. 389 U. S. 995, 88 S.Ct. 499, 19 L.Ed.2d 492, in a case where the defendant's retained counsel admittedly committed a procedural error, the court said:

> "The mistake of appellant's retained counsel in failing to perfect appeal from his judgment of conviction, while regrettable, does not constitute a denial of due process. The applicant was unable to obtain appellate review of his judgment of conviction because of the procedural error committed by his own retained counsel and not because of any action by the State."

The foregoing is emphasized to demonstrate the rule that some state action or inaction is required before any deprivation of the right to appeal becomes effective. *Nelson*, for what it may be worth, involved court-appointed attorneys representing an indigent defendant. In petitioner's case, while it may be assumed that he was personally indigent, his family apparently had sufficient funds to retain an attorney and there is no suggestion in this record that his father, employed in Chicago, could not have paid the appellate costs. To invoke the rule in *Nelson* to all criminal defendants would impose upon the state courts the burden of advising each defendant of his right of appeal. Indeed, it was

not until 1963, when the decisions in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), were handed down, that the Sixth Amendment right to counsel and the further right to continuation of counsel through appellate review was incorporated within the Fourteenth Amendment.

While this court would strongly urge all state court judges to personally advise convicted defendants as to their right of appeal, including the right of appeal at the expense of the state if the defendant is indigent, it must be said that *Nelson* is the first and only case which intimates that this newly-invoked rule for application in state courts raises a constitutional question.

It was not until the effective date of July 1, 1966, that Rule 32(a) (2) of the Federal Rules of Criminal Procedure was amended to require the sentencing judge, in a federal case which has gone to trial on a plea of *not guilty,* to advise the defendant of his right to appeal, including the right to appeal *in forma pauperis* if applicable. The history of this amendment demonstrates that, following the 1963 decisions of the Supreme Court, an influx of cases arose under 28 U.S.C. section 2255, in which federal defendants were contending that they had not been advised by counsel as to their right of appeal. To remove the burden from the shoulders of counsel, the Advisory Committee on Criminal Rules deemed it appropriate to require that this advice be given by the sentencing judge following a sentence imposed in a trial involving a *not guilty* plea. The former rule, Rule 37(a) (2) merely provided that the judge must give this advice when a defendant was *not* represented by counsel.[3]

3. In Hodges v. United States, 368 U.S. 139, 82 S.Ct. 235, 7 L.Ed.2d 184 (1961), the petitioner had counsel. Immediately after sentencing he was removed from the courtroom and counsel did not have the opportunity to confer with him, although they did advise his wife that an appeal should be taken. The writ was

dismissed as improvidently granted with three Justices dissenting. A footnote from the dissenting opinion suggests that if the sentencing court realized that petitioner had no effective legal representation at the time, the court would have been under a duty to notify the defendant of his right of appeal. In the case

■ While the Fourth Circuit, in an unreported memorandum decision, Howard v. United States, No. 14,030 (4 Cir., 1970), has held that the federal judge must also advise a defendant of his right to appeal following trial on a plea of guilty, this opinion is directly in conflict with Crow v. United States, 397 F. 2d 284 (10 Cir., 1968). Since an unreported memorandum decision has dubious value as a judicial precedent, the majority of district judges in the Fourth Circuit have not seen fit to follow Howard.[4]

The Nelson case, if carried to the extreme, and applied retroactively, will invalidate thousands of state convictions. Not only must the attorney advise of the right of appeal according to Nelson, but the advice must go further indicating the manner and time in which to appeal, unless the trial court has advised the defendant as to these rights. While this court strongly feels that the effectiveness of counsel is not predicated upon advice relating to appeal, unless the question of appeal is raised by the convicted defendant, it is respectfully urged that, under no circumstances, should Nelson be applied to any case in which the sentence was imposed prior to June 25, 1969, the date the Nelson case was decided.

Nevertheless, as heretofore noted, petitioner does not present a Nelson situation and what has here been said about Nelson would only be important in the light of the obvious fact that the state habeas judge attached no credibility to petitioner's account of what his attorney said about an appeal.

For the foregoing reasons, it is ORDERED that the petition for writ of habeas corpus be, and it hereby is, denied and dismissed without a plenary hearing in this court.

This is a *final* order. If the petitioner desires to appeal, he may do so by filing a written notice of appeal with the Clerk of the United States District Court, Post Office Box 1318, Norfolk, Virginia 23501, within thirty (30) days from this date. Petitioner may appeal *in forma pauperis*. No certificate of probable cause will issue. If an appeal is noted, the state court habeas corpus records and transcripts (two cases) and the record of the original criminal trial shall be incorporated herein. If no appeal is noted, or if an appeal is noted and the case is finally terminated, the state court records and transcripts shall be returned to the clerk of the state court.

---

now under consideration there is no suggestion that the state trial judge should have realized that petitioner's attorney was ineffective.

4. The Advisory Committee on Criminal Rules has taken note of Howard v. United States and is now recommending a further amendment to Rule 32(a) (2) to provide that there shall be *no duty* on the trial judge to advise a federal defendant of his right to appeal following sentence imposed on a *plea of guilty*.