## TOPHAM v. TOPHAM et al.

(Court of Appeals of District of Columbia. Submitted October 13, 1920. Decided January 3, 1921.)

No. 3374.

1. **Divorce ☞129(1)—Suspicion of adultery not sufficient proof.**

Proof to sustain the charge of adultery against the wife must be clear and satisfactory; strong suspicion or circumstance of suspicion not being sufficient.

2. **Divorce ☞129(16)—Evidence held insufficient to show wife's adultery.**

In a suit for divorce, evidence of improper acts with a man not her husband *held* insufficient to establish adultery by the wife, though tending to create a strong suspicion thereof.

3. **Divorce ☞229—Evidence held to show wife not entitled to further alimony.**

Where the wife's adultery was not sufficiently established to entitle the husband to the divorce, but it was shown she had been guilty of indiscretions with another man and that she left her husband, though he offered to overlook her conduct, *held*, the husband was entitled to be relieved from further payments of alimony under a prior order of the court.

Van Orsdel, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Suit for divorce by Richard C. Topham against Anna R. Topham and another. Decree for defendants, and plaintiff appeals. Affirmed.

See, also, 265 Fed. 458, 49 App. D. C. 308.

C. H. Merillat, of Washington, D. C., for appellant.

Edward Stafford, of Washington, D. C., for appellees.

ROBB, Associate Justice. This is a suit for divorce and the custody of an infant child, in which appellant, Richard C. Topham, charges his wife, Anna R. Topham, with adultery, naming defendant Whalen as co-respondent. When appellant, plaintiff below, submitted his evidence, the court, on motion of defendants, entered a decree dismissing the bill. From that decree this appeal was prosecuted.

It appears that plaintiff, at the time the difficulty arose, was employed in a clerical capacity, at the office of the Evening Star. On the evening of March 26, 1918, plaintiff told his wife that he would be downtown late. The wife replied that she intended to go to a dance which the Eastern Star was conducting for the entertainment of the soldiers. She said she had arranged with the people on the floor above to take care of the baby. The apartment occupied by the Tophams was the first floor above the basement. The owner occupied the basement, and the second floor was occupied by a tenant family. The entrance to the apartment was from the street by a flight of steps leading into a public hallway. Folding doors opened from the hallway into the front room. The hall extended back, opening into the bedroom, which was separated from the front room by curtains or portieres, and back of the bedroom was a kitchen and bathroom.

Plaintiff testified that on the evening in question he returned home before 11 o'clock, but on cross-examination he admitted that in his return to the rule to show cause, filed some six months earlier, he had fixed the hour at about 9:30. As he reached the house he noticed that the shades were drawn down and the folding doors leading to the public hall were closed, although he did not testify that either those doors or the door leading into the bedroom from the hall were locked, and it therefore is to be assumed they were not. He entered the bedroom from the hall and was surprised to see a light burning in the front room, and still more surprised to see his wife sitting across the lap of a man in a soldier's uniform, with one arm around him and kissing his ear. Plaintiff got his Savage automatic gun and entered the front room as his wife was getting up from the soldier's lap, whereupon he fired at the floor. The cap exploded, but the gun hung fire. His wife jumped between him and the soldier "and cried not to shoot." The baby was asleep in the bedroom, and the bed there was not disordered, nor did he observe anything disordered about the couch in the front room. His wife had on an evening dress and "the waist part at the bosom was crushed like," and he thought the skirt "did not hang as a skirt should." "When his wife jumped up they had some words, and she said that the soldier was Harry Hurley, was her cousin, and was about to go to the front. * * * He had never had the least suspicion of his wife" prior to that night. He did not deny, under cross-examination, that he had offered the soldier a cigar, although he did testify that he had no recollection of offering him one. Plaintiff took the baby and went to his father's house, a block or so away, where he spent the night. He ascertained the next morning that his wife had no cousin by the name of Hurley, and she then admitted she had deceived him and that the man's real name was Harry Whalen. On the day following he went to the apartment, where he found his wife "packing up things." For the sake of the child he offered to forget and forgive what had occurred, but his wife replied that she was through with him. In the presence of his father and mother he then asked his wife if she was leaving her home, and she replied, "Yes."

While other persons in the house testified that she had been attending dances with Whalen, they did not testify to any circumstances from which an inference of adultery could be drawn, and another witness who had seen them at dances admitted on cross-examination that she had never seen them come or go together.

[1] Twenty-six years ago this court, in Glennan v. Glennan, 3 App. D. C. 333, a similar case, said:

"In order to sustain a charge which not only brings lasting shame and disgrace to the wife, but also to her innocent children, the proof must be clear and satisfactory. Strong suspicion, or circumstances of suspicion, are not sufficient."

The rule then enunciated has been the guide of the trial court and alluded to as the settled policy of this court. Krous v. Krous, 41 App.

D. C. 200; McKitrick v. McKitrick (Nov. 1919) 49 App. D. C. 109, 261 Fed. 451.

[2, 3] While the evidence in the present case shows that the wife was indiscreet and not sufficiently mindful of her position as a married woman, it goes no farther, in our view, than to create "strong suspicion or circumstances of suspicion," and therefore fails to sustain the burden imposed by the rule adhered to in this court. Even though adultery has not been established, however, the evidence does disclose such an utter lack of appreciation by the appellee of the duties and responsibilities of a wife and mother that we think her husband should be relieved from any further payments of alimony under the prior order of this court, and that order accordingly is set aside.

The decree is affirmed, with costs.

Affirmed.

VAN ORSDEL, Associate Justice, dissents.