### ALLEN et al. v. ALLEN.

(Court of Appeals of District of Columbia. Submitted October 13, 1922. Decided January 2, 1923.)

#### No. 3774.

1. **Divorce ⬅129(7)—Testimony of detectives cannot be arbitrarily rejected.**

Though the testimony of detectives who engage in the business of spying on women for hire should be carefully scrutinized and received with great caution and reserve, it cannot be arbitrarily rejected, when it is consistent with itself and with the known facts, and is corroborated or uncontradicted.

2. **Divorce ⬅184(6)—Appellate court cannot reject testimony of detectives accepted by trial judge.**

The trial judge, who was able to note the appearance, demeanor, and manner of detectives while they were testifying in a divorce suit, was in

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a better position to determine their credibility, and if he based a decree on their testimony the appellate court cannot say it was entitled to no consideration.

3. Divorce ⏦ 129(16)—Evidence held to sustain finding of guilt by wife in a suit by a husband for absolute divorce.

Evidence given by detectives, which was corroborated by others in many particulars, *held* sufficient to show the wife was guilty of adultery.

4. Divorce ⏦129(12)—Proof of disposition and opportunity authorizes inference of adultery.

Proof of a disposition and opportunity warrants a finding of adultery and a decree for absolute divorce.

Appeal from Supreme Court of the District of Columbia.

Suit for divorce by James Alfred Allen against Georgie C. Allen, in which Frank L. Sides was co-respondent. Decree for plaintiff, and defendants appeal. Affirmed.

James A. O'Shea, John I. Sacks, and Albert Harper, all of Washington, D. C., for appellants.

W. A. Coombe, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from a final decree of divorce a vinculo entered in favor of James Alfred Allen against Georgie C. Allen, his wife, on the ground of adultery alleged to have been committed by her with Frank L. Sides during the month of June, 1920.

From the testimony introduced on behalf of the husband it appears that the residence of the wife was kept under surveillance for two weeks in said month of June; that during that period Frank L. Sides frequently visited Mrs. Allen, and that on five or six of his visits he remained in Mrs. Allen's room from 10 to 12 o'clock at night. Private Detective Esper testified that on the 12th of June, 1920, at 5 o'clock p. m., he, accompanied by Private Detective Bonner, called on Mrs. Allen to rent a room, and found her embroidering a towel, which she said she was embroidering for a man named Frank at the Soldiers' Home; that at 9 o'clock p. m. of that day Bonner and himself knocked at Mrs. Allen's door, and that after the lapse of 4 or 5 minutes the door was opened by Frank L. Sides; that on that occasion there was no light in the room, and that Sides was not wearing either coat or collar; that at 11 o'clock p. m. of the same date the witness Esper went to Mrs. Allen's room and was admitted between 5 and 10 minutes after knocking on the door; that the bed was then down; that Sides was in the room, and that Mrs. Allen was wearing a plain kimona. According to the testimony of Esper, Sides was still in the house at 3 o'clock in the morning. Bonner testified that on one occasion he watched Mrs. Allen's room after Sides had entered, and that Sides was there at 2 o'clock in the morning.

The testimony for plaintiff is uncontradicted that on the 26th of June, 1920, Mrs. Allen and Sides left 128 E. Street N. W. between 7 and 7:15 p. m. and returned about 10 o'clock p. m.; that about 11 or 11:30

⏦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

o'clock p. m., on that date, Bonner and Esper, and Sheetz and Gray, police officers, were admitted to Mrs. Allen's room after Bonner had rapped once and probably twice more, and after he had called for admission "real loud"; that Mrs. Allen asked who was there and that there was a delay of at least 1½, or 2 minutes before the door was opened; that Sides was in the room fully dressed, and that Mrs. Allen was wearing a house dress or wrap, and not the dress she had worn when she left the house at 7 or 7:15 o'clock p. m.; that her corsets and waist were lying on a chair, and that there was no light in the room, other than that which came in from the street.

Mrs. Allen testified that she had been acquainted with Sides for about 3 years, and that he had given her a gold watch. She said that she had visited his people and that he was very close to her family. She admitted that she had gone to theaters and summer places with him, but could not say how many times. She stated that after the theater Sides would sometimes come to her room, but that he never remained later than 11 o'clock p. m. She denied that she ever told the detective that she was embroidering a towel for Sides. When asked if she intended to marry Sides in case a divorce was granted, she said that that was a matter about which Sides had something to say as well as herself. She acknowledged that she did not consider it proper to have a man in her unlighted room at 11 o'clock at night, after she had removed her corsets and was in her house dress, but denied that she had changed her clothing while Sides was present.

Frank L. Sides testified that he was the co-respondent in the case and that he was in Mrs. Allen's room at 128 E. Street, N. W., on the evening of June 26, 1920, when the detectives and police officers entered the room; that he was then seated in a rocking chair facing E. street; that both Mrs. Allen and himself heard the knocking on the door, and that Mrs. Allen opened the door as quickly as she could get it opened; that the bed was then up, and not down. He said that Mrs. Allen and himself went to a show about 4:30 o'clock p. m., and returned to the house about 10 o'clock p. m. Mrs. Allen changed her clothing after their return, but he was not in the room at the time. He stated that Mrs. Allen frequently accompanied him to the theater, and that he had made her a present of a watch and other gifts; that she had not given him anything, but that she embroidered his initials on a towel bought by him at the Soldiers' Home; that he had frequently gone to her room when he returned from the theater, and remained there and talked with her. He admitted that he had kissed Mrs. Allen many times.

The appellants contend that the decree of divorce should be reversed, on the ground that the evidence introduced at the trial and in effect as above recited was not sufficient to justify a finding that the defendant Georgie C. Allen was guilty of adultery. In support of that contention it is argued, first, that the testimony of the private detectives hired to secure evidence of the adultery charged in the complaint should be given but little weight as proof of the offense; second, that the evidence in the case tended to show nothing more than indiscretions on the part of the defendant wife, and that her unconventional conduct warrants at best a mere suspicion that adultery was committed.

[1] Men who engage in the business of spying on women for hire, in order to catch them in compromising situations, are deservedly regarded with distrust, and their testimony, like that of all questionable witnesses, should not only be most carefully scrutinized, but received with great caution and reserve. Nevertheless, if such testimony be consistent with itself and the known facts, and is corroborated or stands uncontradicted by other witnesses entitled to credit it should not be arbitrarily rejected.

[2] The testimony of Esper that the bed was down on the night of the 26th of June is contradicted by Sheetz, Gray, and Sides, and Bonner's statement that, after knocking for admission to Mrs. Allen's room at 11:15 on that evening, 5 minutes elapsed before the door was opened, is not corroborated by Sheetz, who said that there was a delay of only 1½ or 2 minutes. However, the testimony of the detectives as to the essential particulars tending to establish an adulterous disposition and the opportunity to commit the offense was in the main in accord with the admitted facts and was supported by that of credible witnesses. Moreover, the trial judge was able to note the appearance, demeanor, and manner of the detectives while they were testifying, and as he was in a better position then we are to determine their credibility, we cannot say that their testimony was without weight and entitled to no consideration. Smith v. Smith, 149 Ill. App. 596, 597.

[3] That brings us to the discussion of the contention that the testimony, even if taken as true, discloses nothing more than indiscretions on Mrs. Allen's part, and justifies at best a mere suspicion of adultery. Taken singly, the acts which characterized the relations between Mrs. Allen and Sides might charitably be overlooked as mere indiscretions. Taken together, however, they were something more than manifestations of a harmless platonic friendship, and must be regarded as prima facie evidence of an adulterous disposition, which only awaited the opportunity to complete the offense.

The conduct of the appellants was in bold violation of the conventions which guard the good name and chastity of wives and are respected by all pure women. A married woman of sound mind knows to a certainty the consequence of making an intimate of a man not related to her by blood or marriage. She understands perfectly well the significance of his frequent kisses, and is thoroughly aware of what must follow if she makes him a welcome guest in her bedroom at late and unusual hours of the night, while she is in careless attire.

Human experience has demonstrated to a conclusion that conduct, visits, liberties, familiarities, and intimacies of that kind mean but one thing, and that, if not promptly repulsed, the citadel of marital virtue inevitably yields to the repeated assaults of encouraged temptation. The admitted facts and the unimpeached testimony in the case definitely prove that Mrs. Allen accepted advances from Sides, which unexplained must be regarded as a plain violation of the marriage bond, and as wholly inconsistent with any innocent purpose. Her conduct, was, at least, prima facie evidence of guilt, and, as that evidence could not be nullified by silence or overcome by a naked presumption of innocence, adultery is the only rational theory left to account for her very uncon-

ventional relations with the co-respondent. Separated from her husband, probably without fault on her part, and naturally longing for companionship, Mrs. Allen should have closed the door on temptation. She did not do so, and thereby brought about a chain of unexplained incriminating circumstances which prima facie established an adulterous disposition, coupled with an opportunity to commit the offense. Bast v. Bast, 82 Ill. 584; Hurtzig v. Hurtzig, 44 N. J. Eq. 329, 15 Atl. 537.

[4] Such a disposition and opportunity warranted a finding of adultery and a decree of divorce a vinculo. Thayer v. Thayer, 101 Mass. 111, 113, 100 Am. Dec. 110.

The cases relied upon by the appellants are not in point. In Glennan v. Glennan, 3 App. D. C. 333, and Krous v. Krous, 41 App. D. C. 200, the evidence introduced by plaintiff justified nothing more than a suspicion of adultery. It does not appear that an adulterous disposition, with an opportunity to commit the offense, was established in either case. In McKitrick v. McKitrick, 49 App. D. C. 109, 261 Fed. 451, testimony was submitted on the part of plaintiff, which, standing uncontradicted and unexplained, would have justified a decree of divorce. The damaging admissions to which the plaintiff testified, however, were denied or shown to have been misconstrued. Moreover, the apparently incriminating circumstances and the relations of the wife to the co-respondent were explained and shown to be innocent.

In Topham v. Topham, 50 App. D. C. 229, 269 Fed. 1013, the wife was discovered about 11 o'clock in the evening in the front room of the home, kissing a soldier in uniform. That was substantially the only evidence of adultery adduced. That case differs from this, inasmuch as there was no evidence showing or tending to show an opportunity to commit adultery.

The decree appealed from is therefore affirmed, with costs.

Affirmed.