## FLETCHER v. UNITED STATES.
### No. 9243.

United States Court of Appeals.
District of Columbia.

Argued Oct. 7, 1946.

Decided Nov. 12, 1946.

Mr. Curtis P. Mitchell, of Washington, D. C., for appellant.

Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C. with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief for appellee. Mr. Stephen C. Miller, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTY-MAN, Associate Justices.

GRONER, C. J.

Appellant was indicted, convicted and sentenced under four counts for the unlawful sale of narcotics in the District of Columbia.[1] The evidence to sustain the charge was given by an informer (or as he is sometimes called, a stool pigeon), himself an addict, who testified that on May 12th, 18th, 23rd and June 2nd, 1945, he went alone to a room in a house numbered 1122 Ninth Street, in the City of Washington, and on each of the respective dates purchased from appellant, for $6, a package containing a small amount of heroin.

In the view we take of the case the single question for decision is whether the trial court erred in refusing a requested instruction to the effect that the informer's testimony should be examined by the jury with greater scrutiny and care than the testimony of an ordinary witness. We are of opinion that in the facts of this case the request was a proper one and the refusal of the court to so instruct the jury was prejudicial error, which requires us to reverse the conviction.

An examination of the evidence at the trial shows that the only testimony given to connect appellant with the crimes charged was that of the informer. The narcotic agent who employed him at $6 a day to "turn up" cases involving violations of the narcotic law never saw appellant nor witnessed any one of the alleged transactions. On the first occasion the agent accompanied the witness to the neighborhood of a house numbered 307 L Street, in the City of Washington, where apparently the informer expected to find appellant, but not finding him, the informer, without notice to the agent, took a taxicab and drove to the Ninth Street address. He went to the second floor, knocked on a door which was opened by appellant, made the purchase and then went to his own home, and did not see the agent again until the following day, when he delivered to him an envelope, the contents of which he claimed to have purchased from appellant.

The second transaction was more or less

---

[1] Harrison Narcotic Act, 53 Stat. 271, 26 U.S.C.A. Int.Rev.Code, § 2553(a); Import Export Act, 42 Stat. 596, 21 U.S.C.A. § 174.

of the same order. The informer and agent walked to the neighborhood of Ninth Street; the informer went alone into the house and up to the second floor, made the purchase, and returned to 11th and L Streets,—some distance away—where he delivered the package to the agent, who was there waiting for him in his automobile. Although the agent testified that he watched the informer as he entered the apartment house and after he emerged, nobody who testified saw where he went, whom he met or what he did while he was in the house. The circumstances of the third and fourth transactions were in all essential respects of the same pattern. There was at no time any search of the premises, the warrant to arrest appellant was not issued until approximately five months later, and the arrest was made blocks away from the place of the alleged sales.

The rental agent in charge of the Ninth Street house testified that the building had been converted from a dwelling into an apartment house, and that appellant was never a tenant of any portion of the building, and there was undisputed evidence that appellant's residence at the time of the alleged transactions, and up to the time of the trial, was 26 Eye Street, Northeast,—a totally different part of the City. It is quite true that the narcotic agent and the police officer, who were his companions on the occasions mentioned, testified that on each the informer was searched, to determine if he had narcotics or money, before he was sent out on his purchasing mission, but the search consisted merely in looking through his coat, vest and trousers pockets. That such a search was little more than a farce is instantly apparent to anyone familiar with the cunning of narcotic addicts, and that it was, on at least the first occasion, totally ineffective in determining whether the informer carried either narcotics or money of his own is shown by the testimony of the informer and the agent that though the search disclosed neither narcotics nor money, the fact was that, notwithstanding the informer used the money given him in the purchase of narcotics, he, at the same time, was able to hire a taxicab to take him to the place where he claims to have made the purchase. As we have seen, the evidence not only disclosed that the informer was himself an addict and a peddler of narcotics, but also that he had been previously convicted and sentenced for violating the narcotic laws.

■■■ In the circumstances we have detailed we think it apparent that appellant was entitled of right to have the jury cautioned. Granting that the credibility of the testimony of a paid informer is for the jury to decide, it nevertheless follows that where the entire case depends upon his testimony, the jury should be instructed to scrutinize it closely for the purpose of determining whether it is colored in such a way as to place guilt upon a defendant in furtherance of the witness's own interest. Here, admittedly, the usefulness of the witness—and for which he received payment from the agent—depended wholly upon his ability to make out a case. No other motive than his own advantage impelled him in all that he did. And when to this is added the well recognized fact that a drug addict is inherently a perjurer where his own interests are concerned, it is manifest either that some corroboration of his testimony should be required, or at least that it should be received with suspicion and acted upon with caution. The rule in this jurisdiction for a quarter of a century has been to require that a jury be warned in the case of evidence given by a detective engaged in the business of spying for hire. The duty is more impelling where, as here, there is not a jot or tittle of other evidence and the criminal record of the witness is shown. See Egan v. United States, 52 App.D.C. 384, 287 F. 958; Allen v. Allen, 52 App.D.C. 228, 285 F. 962; Freed v. United States, 49 App. D.C. 392, 266 F. 1012; and see also District of Columbia v. Clawans, 300 U.S. 617, 630, 57 S.Ct. 14, 81 L.Ed. 386; Lett v. United States, 10 Cir., 15 F.2d 686, 689; and Wharton's Criminal Evidence, § 730, 11th Ed.

Reversed and remanded for a new trial.