UNITED STATES of America, Appellee,

v.

**Paul F. GREGORIO, Appellant.**

**No. 72–2429.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1974.

Decided May 31, 1974.

Franklin P. Hall, Richmond, Va. [Court appointed counsel] (Hall, Hall & Warren, Richmond, Va., on brief), for appellant.

Michael E. Marr, Asst. U. S. Atty. (George Beall, U. S. Atty., on brief), for appellee.

Before WINTER, CRAVEN and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

In a trial by jury, Paul F. Gregorio was found guilty of conspiracy to violate the federal narcotics laws and making, or aiding and abetting making, six sales of cocaine hydrochloride not in the original stamped package. From aggregate sentences of forty years, he appeals. He asserts six grounds for reversal, but we find none of them meritorious and so affirm the judgments. We will discuss the asserted errors *seriatim*, stating separately the facts which relate to each.

I.

A seven-count indictment (Criminal No. 71–0358–M) was returned against Gregorio on August 20, 1971, after the complaining witnesses had appeared before the grand jury and had testified in person. Gregorio was arraigned on this indictment and he pleaded not guilty to each and every count. He was not tried promptly, however, because successive postponements which he requested were granted.

The original indictment alleged certain acts which the government expected to prove by the testimony of Ralph Caputo. However, on the eve of trial, Caputo could not be located and it was feared that he would be unavailable for trial. Thereupon the government requested and was granted a continuance in order to seek a superseding indictment from the grand jury in which all references to acts which could be proved only by the testimony of Caputo were stricken. The district court directed that any superseding indictment be served on defendant by September 6, 1972, and fixed September 18 as the date for trial.

The superseding indictment (Criminal No. 72–0464–M) was returned on September 5, 1972, just before the term of the then existing grand jury was about to expire. It was obtained on the testimony of a special agent of the Treasury Department who had no firsthand knowledge of the matters on which the indictment was requested, and his testimony appears to have been a hearsay statement of the evidence which had been presented to the grand jury which had returned the original indictment.

Gregorio moved to dismiss the superseding indictment on the ground, *inter alia*, that it had been returned solely on the basis of hearsay evidence in violation of his fifth amendment right to indictment by grand jury. The motion was denied, and then the government, apparently having located Caputo, moved to abandon and dismiss the superseding indictment and to proceed to trial on the original indictment. The government's motion was made on the morning of trial. Defendant objected to proceeding to trial on the original indictment. The district court sustained the objection and required defendant to be tried on the superseding indictment.

Before us, defendant contends that the indictment on which he was tried and convicted was invalid because it was based solely on hearsay evidence.

He cites United States v. Arcuri, 282 F. Supp. 347 (E.D.N.Y.1968), aff'd, 405 F. 2d 691 (2 Cir. 1968), cert. denied, 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969), and United States v. Estepa, 471 F.2d 1132 (2 Cir. 1972), in support of his argument. We see no occasion, however, to decide defendant's contention on its merits. The fact is that the superseding indictment differed from the original indictment only in omission of the allegations which depended upon the testimony of Caputo. No claim could be made that the original indictment was returned solely on hearsay evidence. The allegations in the superseding indictment had initially been made on the basis of testimony which was admissible under strict rules of evidence by witnesses who appeared before the grand jury, who were subject to questioning, and whose demeanor and credibility could be judged. More importantly, defendant was given the option of proceeding to trial on the original indictment, the validity of which he could not and did not challenge. He declined to exercise this right. We hold, therefore, that on the special circumstances of this case defendant waived his right to complain about the hearsay basis of the superseding indictment on which he was tried, even if as an abstract proposition of law his contention might otherwise be meritorious.

## II.

Before charging the jury, the trial judge held a conference in chambers with counsel for defendant and the government to hear argument on requested jury instructions and, in accordance with Rule 30, F.R.Cr.P., to make and advise counsel of his rulings thereon. Gregorio, then in custody, was not present at this conference. Although neither Gregorio nor his counsel objected to the defendant's absence from the conference on jury instructions, the failure to have the defendant present is claimed on this appeal to be reversible

error.[1] Although not articulated as such, we consider the contention as one that defendant's absence constituted "plain error" which we should consider even in the absence of formal request or formal objection.

Defendant asserts two bases for his contention that he had a right to be present during the conference on jury instructions: the due process clause of the fifth amendment, and Rule 43, F.R. Cr.P. As we shall show, defendant's asserted right under Rule 43 is the more ancient one and decision of it also serves to decide defendant's asserted due process right. We begin therefore with consideration of Rule 43.

■ In pertinent part, Rule 43 provides that

> [t]he defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules.

The advisory committee's note explained that this part of the rule was no more than a "restatement of existing law," citing Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), and Diaz v. United States, 223 U.S. 442, 455, 32 S.Ct. 250, 56 L.Ed. 500 (1912), two early Supreme Court cases applying the common law right of presence in federal criminal cases. In *Lewis*, the Court held that a federal defendant had a common law right "to be brought face to face with jurors at the time when the challenges were made," and in *Diaz*, a non-capital case,[2] the Court ruled that a defendant not in custody[3] could waive his right to be present during trial, defining the right in broad, often quoted language.

> In cases of felony our courts, with substantial accord, have regarded [the defendant's right to be present] as extending to every stage of the trial, inclusive of the impaneling of the jury and the reception of the verdict, and as being scarcely less important to the accused than the right of trial itself. 223 U.S. at 455.

Since the language in Rule 43 relied on by defendant is a crystallization of these statements of the common law, we believe that the rule should be interpreted in light of the evolving meanings and purposes of the common law.

The earliest and most forceful rationale for the common law privilege of presence undoubtedly derived from the English common law rule, finally abolished by Act of Parliament in 1836, which denied accused felons—though not misdemeanants—the assistance of counsel.[4] If a defense was to be made, the accused felon had to be present to make it;[5] and since the death penalty was then more often imposed in felony cases than now, the accused's presence occupied a position of even greater importance. However, the common law prohibition against assistance of counsel for felons was largely rejected by the

---

1. Gregorio is represented by different counsel on appeal.

2. "Presence in capital cases may not be waived in any respect." 8A J. Moore, Federal Practice, ¶ 43.02[2] (2 ed. 1973). *But cf. generally* Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

3. *Diaz* is some authority, albeit dictum, that a defendant in custody such as Gregorio cannot waive his right to be present "because his presence or absence is not within his own control." *See* United States v. Crutcher, 405 F.2d 239, 243 (2 Cir. 1968), Moore, *supra* note 2, at n. 7. *See also* Cross v. United States, 117 U.S.App.D.C. 56, 325 F.2d 629, 633 (1963), Pearson v. United States, 117 U.S.App.D.C. 52, 325 F.2d 625 (1963). In light of our conclusion that there is no common law or constitutional right to be present during legal conferences on jury instructions, we do not have to reach and assess the legal significance of Gregorio's custody.

4. *See* Powell v. Alabama, 287 U.S. 45, 60, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ; Moore, *supra* n. 2, at ¶ 43.02[1].

5. *See Id.* Obviously, this historic rationale behind the privilege of presence would have much more direct bearing on a case where a defendant was proceeding *pro se*.

constitutions and statutes of the American colonies, *see* Powell v. Alabama, 287 U.S. 45, 61–65, 53 S.Ct. 55, 77 L.Ed. 158 (1932), in part because of the "inherent irrationality of the English limitation." United States v. Ash, 413 U.S. 300, 306, 93 S.Ct. 2568, 2572, 37 L.Ed.2d 619, 625 (1973). As a result, in American opinions—and in 19th and 20th century English decisions—other reasons behind the common law right of presence have come into sharp relief, although the distinction between a misdemeanant's and felon's right of presence has persisted.[6]

Today—apart from the constitutionally based sixth amendment right of confrontation which is not implicated in this case—[7] there appear to be two reasons behind the right of presence: (1) assuring nondisruptive defendants [8] the opportunity to observe—and, it is to be hoped, to understand—all stages of the trial not involving purely legal matters generally incomprehensible to the layman [9] in order to prevent the loss of confidence in courts as instruments of justice which secret trials would engender; [10] (2) protecting the integri-

---

**6.** *See, e. g.*, Fed.R.Crim.P. 43 (advisory committee's note explains that accused misdemeanants may waive the right of presence because "appearance in court may require considerable travel, resulting in expense and hardship not commensurate with the gravity of the charge." Schwab v. Berggren, 143 U.S. 442, 445, 12 S.Ct. 525, 36 L.Ed. 218 (1892) (Harlan, J.) (see quote *infra* note 11), Hopt v. Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (Harlan, J.).

**7.** "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Black, J.).

**8.** *See generally* Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

**9.** *See* Moore, *supra* n. 2, at ¶ 43.03[1] & [2], Schwab v. Berggren, 143 U.S. 442, 449, 12 S.Ct. 525, 527, 36 L.Ed. 218 (1892) (Harlan, J.) ("neither reason nor public policy require that [the defendant] shall be personally present pending proceedings in an appellate court whose only function is to determine whether, in the transcript submitted to them, there appear any error of law to the prejudice of the accused; especially, where, as in this case, he had counsel to represent him in the court of review.") *Cf.* Gideon v. Wainwright, 372 U.S. 335, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1963), Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

**10.** One of the best expressions of this rationale behind the right of presence is found in Rex v. Bodmin Justices [1947] K.B. 321, 325 [1947] 1 All Eng. 109, a criminal case in which a witness was interrogated by the court in the absence of the defendant. In that case, Lord Goddard said:

> That is a matter which cannot possibly be justified. I am not suggesting for one

moment that the justices had any sinister or improper motive in acting as they did. It may be that they sent for this officer in the interests of the accused; it may be that the information which the officer gave was in the interests of the accused. That does not matter. Time and again this court has said that *justice must not only be done but must manifestly be seen to be done* . . . .. (Emphasis added).

A strong statement of similar import was made by Justice Roberts' dissent in Snyder v. Massachusetts, 291 U.S. 97, 131–132, 54 S.Ct. 330, 342, 78 L.Ed. 674 (1934), in which Justices Brandeis, Sutherland, and Butler joined:

> [T]he privilege goes deeper than the mere opportunity to cross-examine, and secures [the defendant's] right to be present at every stage of the trial. The cases cited in the margin, while by no means exhausting the authorities, sufficiently illustrate and amply sustain the proposition that the right is fundamental and assures him who stands in jeopardy that he may in person, see, hear and know all that is placed before the tribunal having power by its finding to deprive him of liberty or life. (Footnote omitted).

Although a dissent, it has had continuing influence. *See, e. g.* Near v. Cunningham, 313 F.2d 929, 932 n. 1 (4 Cir. 1963). *See generally* Shields v. United States, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927) (right of presence at rendering of verdict) (dictum), Bustamante v. Eyman, 456 F.2d 269 (9 Cir. 1972) (right of presence during replay of recorded jury instructions), Barton v. State, 67 Ga. 653, 44 Am.Rep. 743 (failure to secure presence of accused felon in custody "at all stages of the trial,—especially at the rendition of the verdict" is reversible error) quoted with approval in Diaz v. United States, 223 U.S. 442, 456, 32 S.Ct. 250, 56 L.Ed. 500 (1912).

ty and reliability of the trial mechanism by guaranteeing the defendant the opportunity to aid in his defense.[11]

We think neither rationale behind the right of presence is applicable to a purely legal conference on jury instructions. First, the defendant lacked the legal abilities necessary to make a contribution of significance to his defense. Second, had the defendant been present he probably would have been thoroughly confused by the legal argument on proposed jury instructions. An opportunity to observe the conference in chambers would not have improved any sense that justice was being done and possibly might have decreased it; Gregorio did, of course, observe and hear the end product of the conference—the actual giving of the instructions. Furthermore, if the court or counsel had attempted to explain the proceedings to the defendant, the conference would have been unavoidably disrupted and a not insubstantial amount of time might well have been consumed without any significant compensating improvement in the defendant's sense "that justice was being done." Certainly a private conference between defense counsel and the defendant would better serve the explanatory function since it could focus exclusively on conveying an understanding of the legal issues involved in the jury instructions.

Our determination that Rule 43 does not confer on criminal defendants the right to attend a purely legal conference on jury instructions is also supported by consideration of Rule 43 in conjunction with Rule 30. Rule 43 requires the presence of the *"defendant"* (emphasis added) at every stage of the trial "except as otherwise provided by these rules . . . ." Rule 30, in pertinent part, requires the court to "inform *counsel* of its proposed action upon the [jury instruction] requests prior to their arguments to the jury . . . ." (Emphasis added). Rule 30 does not compel the presence of the accused at this time. Significantly, it says only that "counsel" need be informed and thus, by implication, that the "defendant" referred to in Rule 43 need not be in attendance.

Our analysis of the policies behind Rule 43's right of presence is fully applicable to defendant's due process claim.[12] Indeed, we note one distinguished commentator's statement that Rule 43 implements the sixth amendment right of confrontation and "embodies the common-law privilege of presence

11. *See* Schwab v. Berggren, 143 U.S. 442, 448, 12 S.Ct. 525, 527, 36 L.Ed. 218 (1892).
The personal presence of the accused, from the beginning to the end of a trial for felony involving life or liberty, as well as at the time final judgment is rendered against him, may be, and must be assumed to be, vital to the proper conduct of his defense, and cannot be dispensed with.
Hopt v. Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (defendant's presence important to exercise of jury challenges in elaborate collateral proceeding not part of the common law "trial") ; 4 W. Blackstone, Commentaries *353 (defendant's presence necessary to assist counsel in making preemptory challenges) *followed in* Lewis v. United States, 146 U.S. 370, 376, 13 S.Ct. 136, 36 L.Ed. 1011 (1892).

12. In the first part of this century it was necessary for federal courts to delineate carefully and to examine separately the sources of the right of presence, *see* Snyder v. Massachusetts, 291 U.S. 97, 107, 54 S.Ct. 330, 78 L.Ed. 674 (1934), Frank v. Mangum, 237 U.S. 309, 338–345, 35 S.Ct. 582, 59 L. Ed. 969 (1915), for then due process had not yet developed to the point that it included such fundamental rights as trial by jury, see *Snyder, supra,* 291 U.S. at 105 ; *Frank, supra,* 237 U.S. at 340, the privilege against self-incrimination, *see Snyder, supra,* 291 U. S. at 105 ; *see Frank, supra,* 237 U.S. at 342, and—most importantly for the privilege of presence—the right of confrontation. *See Snyder, supra,* 291 U.S. at 106 ; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L. Ed.2d 923 (1965). However, under the currently applicable totality of the circumstances test appropriate to due process, we find no warrant to reject or to dilute the two policies behind the privilege of presence simply because the due process rubric has been invoked. Furthermore, no additional reasons solely or specially connected to a due process analysis have been proffered by defendant or disclosed by our own research.

as well as the due process right of the accused to be present." Moore, *supra*, n. 2, at ¶ 43.02[1]. Thus, we conclude that defendant has no right founded in the common law or in the Constitution to be present in chambers while jury instructions are formulated by counsel and the trial judge.

However, defendant argues that our decision in Near v. Cunningham, 313 F. 2d 929 (4 Cir. 1963), compels the contrary conclusion that the due process clause of the fifth amendment requires the defendant's personal attendance during a conference on jury instructions. In *Near*, we were concerned with an agreement between the judge and the attorneys, reached in the absence of the accused and without consultation with him, that the jury would not be sequestered during recesses of the court. We concluded that this decision might have been "fateful to the defendant" because it was alleged that the jury had been "prejudiced by statements of spectators on the courthouse lawn made in the presence of the jurors during recesses of the trial" which included "opinions of the spectators as to the proper punishment of the petitioner, including opinions that the petitioner should be killed." 313 F.2d at 930–931. Thus, our holding in *Near* turned on the dual circumstances of "the prisoner's absence from the conference" which he could have understood and might have affected "combined with the allegations of serious consequences which are said to have flown from the decision." 313 F.2d at 932. Significantly, we noted in *Near* that "the conference involved more than a discussion of legal principles which the defendant could not be expected to understand or to contribute anything of value." *Id.* While both defendant in the instant case and the defendant in *Near* were absent from a conference in chambers where an important decision was reached, in *Near* petitioner made non-frivolous allegations of prejudice resulting from his absence and the nature of the conference was such that the defendant could be expected to understand

the proceedings and perhaps affect the outcome, while in the instant case defendant has neither shown prejudice to either of the two policy interests involved in the right of presence, nor advanced a plausible argument that he would have understood the proceedings much less affected them. Thus, *Near* is no bar to our conclusion that the failure to include the defendant in a purely legal conference on jury instructions did not deprive him of any right vouchsafed by the fifth amendment's due process clause. *See* Schwab v. Berggren, 143 U.S. 442, 449, 12 S.Ct. 525, 36 L.Ed. 218 (1892) (Harlan, J.) (quoted in n. 9 *supra*.); United States v. Sinclair, 438 F. 2d 50, 52 (5 Cir. 1971); Pope v. United States, 287 F.Supp. 214, 219 (W.D.Texas 1967), aff'd, 398 F.2d 834 (5 Cir. 1968). *See generally* Snyder v. Massachusetts, 291 U.S. 97, 105–106, 113, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (Cardozo, J.); Deschenes v. United States, 224 F. 2d 688 (10 Cir. 1955).

Thus, we conclude that there was not plain error in defendant's absence when jury instructions were considered. This is not to say that a district judge might not, in the exercise of his discretion—particularly if unusual factors are present in the case, or if the defendant is possessed of unusual characteristics—properly accede to a timely request that the defendant be present. But it was not, nor would it be, error or plain error to exclude him from a conference of the type that was held here.

### III.

As part of the government's case, the testimony of several witnesses was presented who were, or had been, drug users. One witness, Brenda Conn, testified that she had sniffed cocaine for about a year or two but that she had never "shot" cocaine. She did not testify that she was an addict. Another, Ralph Caputo, who was located by the government for trial, testified that he had used cocaine countless times and that he was on a methadone maintenance program. A third, Conchita Wynn, de-

scribed how she inhaled or "snorted" cocaine on numerous occasions, but she did not admit to being an addict. Yet another witness, Susan Carolyn Rowland, testified about her repeated use of cocaine, admitted that she had been addicted to heroin, and stated that she was presently on a methadone maintenance program. Finally, the witness Carol Dizeo, also known as Tracey Lee, admitted that she was an addict, but said that she, too, was on a methadone maintenance program. All of these witnesses offered testimony which incriminated the defendant to a greater or lesser degree.

The defendant made numerous requests that the jury be instructed that "it is a well recognized fact that a drug addict is inherently a perjurer where his or her own interests are concerned" and that "it is a well recognized fact that a drug addict is inherently a perjurer where his or her own interests are concerned and it is therefore manifest that such testimony should be received with suspicion and acted upon with caution."

The district court denied defendant's requests for addict instructions. The district court did instruct the jury that Ralph Caputo and Brenda Conn were paid informers, that the testimony of an informer who provides evidence "for pay or for immunity from punishment or for personal advantage or vindication must be examined and weighed by the jury with greater care than the testimony of an ordinary witness," and that the jury must decide whether the informers' testimony "has been affected by interest or by prejudice against the Defendant." The jury was also told that Carol Dizeo, Ralph Caputo, Conchita Wynn, Brenda Conn, and John D'Anna, as well as others, were defendant's accomplices, that an accomplice is not incompetent to testify, but that "the jury should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a Defendant upon the unsupported testimony of an alleged accomplice unless you believe that unsupported testimony

beyond a reasonable doubt." Thus, of the admitted drug users, or former addicts—Conn, Caputo, Wynn, Rowland and Dizeo—only Dizeo was not mentioned by name in one or both of the special instructions; and her testimony was merely cumulative. In addition to the special instructions, the jury was cautioned generally in passing upon credibility, "to scrutinize the testimony given by each witness, the circumstances under which each has testified, and his intelligence, his or her motive and state of mind, and his or her demeanor and manner while on the witness stand."

█ Despite the instructions on paid informers, accomplices, and the credibility of witnesses, defendant argues that his requested instructions cautioning the jury in receiving the testimony of drug addicts should have been granted. He places principal reliance on United States v. Kinnard, 150 U.S.App.D.C. 386, 465 F.2d 566 (1972); United States v. Griffin, 382 F.2d 823 (6 Cir. 1967), and Fletcher v. United States, 81 U.S.App. D.C. 306, 158 F.2d 321 (1946), which held that a cautionary instruction was required when a paid addict informer's testimony was the government's sole evidence on one or more material elements of the case. While it does not appear that this circuit has yet addressed the question of addict instructions, we note that several circuits in addition to the District of Columbia Circuit and Sixth Circuit have recently spoken approvingly of addict instructions. See, e. g., Virgin Islands v. Hendricks, 476 F.2d 776, 779–780 (3 Cir. 1973); United States v. Collins, 472 F.2d 1017, 1018–1019 (5 Cir. 1972). We conclude, for the reasons hereafter stated, that the district court was not in error in denying defendant's requested addict instructions.

The leading case of United States v. Kinnard identified the special dangers that paid addict informers would fabricate testimony. These addiction-related motivations to prevaricate are the addict's fear of retribution from higher-ups in the drug trade, his desire to avoid the harsh penalties for narcotic vi-

olations, and, most importantly, his fear that a failure to secure conviction would mean that he could no longer support his habit [13]—and might face withdrawal symptoms—either because he would no longer be free from incarceration and thus have access to his regular source of supply "in the street," or because he would no longer receive drugs or money as informant's pay.

However, in *Griffin* and *Fletcher* the crucial operative fact of addiction was clear and in *Kinnard* the defendant erroneously had been foreclosed from establishing it. *Accord*, United States v. Masino, 275 F.2d 129, 131–132 (2 Cir. 1960). In the instant case, the status of the witnesses as "addicts" is unclear. The record does not contain such strong proof of addiction that we may conclude in the first instance that the witnesses were addicts, and it has not been suggested that the district court precluded establishment of the fact of addiction. ■ Moreover, the significance of cocaine or methadone "addiction" is not certain. In each of the three cases in which an addict instruction has been held necessary—and in the two recent decisions indicating approval of such an instruction—heroin addiction has been involved. In regard to heroin addiction, we feel at liberty to take judicial notice of the fear which a witness addicted to heroin might have of the brutal and physiologically verifiable withdrawal symptoms connected with that drug, but the consequences of deprivation of co-caine or methadone from the viewpoint of the addict, whether physiological or psychological, are not sufficiently known that we may take judicial notice of them. Without expert testimony, we cannot say that methadone or cocaine addicts predictably will behave like heroin addicts in similar circumstances.

But even if the factual predicates to an addict instruction had been established, the instruction sought in this case was improper. The defendant's request, repeated numerous times, that the jury be instructed that a drug addict is "inherently a perjurer" was excessive and would have entirely emasculated the witnesses' testimony rather than have simply cautioned the jury before receiving it. In rejecting the "inherently a perjurer" language, Judge Van Dusen stated:

> Defendant took this "inherently a perjurer" language from Fletcher v. United States, 81 U.S.App.D.C. 306, 158 F.2d 321, 322 (1946). While the court in *Fletcher* was concerned with the reliability of an addict-informer, the court's decision was to allow such testimony but to require that a cautionary instruction be given. To suggest that a cautionary instruction should contain the words "inherently a perjurer" is to misread *Fletcher*, for such an instruction would in effect make the testimony incompetent altogether. The district court was correct in not giving the proposed instruction.

13. "The addict's habit makes him uniquely subject to constant surveillance and susceptible to arrest—he is in a perpetual status of violating the law.[15] For the ad-

> 15 [original footnote] [T]he addict lives in almost perpetual violation of one or several criminal laws, and this gives him a special status not shared by other criminal offenders. Together with the fact that he must have continuous contact with other people in order to obtain drugs, it also gives him a special exposure to police action and arrest . . . .. [The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Narcotics and Drug Abuse] at 10. *See also*

[A. Lindesmith, The Addict and the Law] at 46 [(1965)].

dict, arrest is harassment of a special sort, for he is forced to undergo the beginnings of withdrawal symptoms.[16] At

> 16 [original footnote] Among the symptoms of the withdrawal sickness, which reaches peak intensity in 24 to 48 hours, are muscle aches, cramps, and nausea. [Task Force Report at 2.]

this stage, a bribe of heroin or the promise of immediate release and return to the habit seem irresistible."
465 F.2d at 571 & nn. 16 & 17 (Bazelon, C. J., concurring).

Virgin Islands v. Hendricks, 476 F.2d 776, 779 (3 Cir. 1973).

We accept this reading of *Fletcher*, particularly since the District of Columbia Circuit, itself, has held that the use of the "inherently a perjurer" language in a jury instruction is reversible error. Godfrey v. United States, 122 U.S.App. D.C. 285, 353 F.2d 456 (1966). The District of Columbia Circuit explained that "it was error for the Trial Judge to couch his 'cautionary instruction' to the jury about addicts in the same terms as the appellate rationale for the *need* for an instruction about the testimony of *paid* informants who are addicts." *Id.* at 458 n. 1. (Emphasis in original). Thus, the trial court did not err in rejecting defendant Gregorio's proffered instruction.

■ Furthermore, following *Hendricks, supra,* 476 F.2d at 779, *Collins, supra,* 472 F.2d at 1018–1019, *Kinnard, supra,* 465 F.2d at 568, 575–577, 580, *Griffin, supra,* 382 F.2d at 828–829, and *Fletcher, supra,* 158 F.2d at 321, 322, we hold that the fact that the trial court did not on its own motion draft a more moderate addict instruction was not plain error since the non-addict testimony in this case fully corroborated the testimony of those witnesses claimed to be addicts, covered all material elements of the case, and was, by itself, sufficiently strong that it would have supported the guilty verdict absent all alleged addict testimony.

### IV.

■ We see no merit in defendant's contention that the evidence was not legally sufficient to permit the jury to find beyond a reasonable doubt that the white, powdery, crystalline substance involved in the sale transactions described in the indictment was cocaine hydrochloride. Admittedly, no samples were admitted into evidence, no samples were subjected to chemical analysis, and there was no expert testimony from medically or scientifically trained persons. There was, however, an abundance of lay testimony from users of cocaine who had

sampled the substance that its identity as cocaine was unmistakable. Furthermore, there was other compelling circumstantial proof (secrecy and deviousness of transactions, high prices paid in cash for the substances, lack of complaint on the part of purchasers, descriptive language of participants in transactions, and descriptions of the physical appearance of the substance). These factors were recognized in United States v. Aguecci, 310 F.2d 817, 828–829 (2 Cir. 1962), as legally sufficient to prove the identity of a substance as a drug. *See also* United States v. Atkins, 473 F.2d 308 (8 Cir. 1973).

### V.

After the jury found defendant guilty as charged but before he was sentenced, the prosecutor made a statement to the press which was the subject of an article in each of Baltimore's two daily newspapers. In the articles it was reported that defendant had been convicted, that he was, according to the prosecutor, the largest drug pusher to be convicted in Maryland, and that the prosecutor intended to request the maximum 70-year prison term at the time of sentencing. The prosecutor indicated that his request was in accord with a statement by President Nixon approving harsh sentences for drug pushers.

Defendant moved for a new trial, or in the alternative for a mistrial, because of this post-conviction publicity. The district court denied the motion, stating that the newspaper articles would have no effect upon it in passing sentence, that it would sentence solely on the basis of the argument of counsel, the evidence at trial, and facts properly contained in the presentence report. The court stated that it would not impose any sentence because the President of the United States or anybody else said that it should be imposed.

■ We find no error in denial of the motion. We accept completely the statement of the district court that it would impose sentence solely upon the

facts heard during the trial, information properly contained in the report of presentence investigation, and the arguments of counsel. While imposing a justifiably severe sentence, the district court did not fix the sentence in accordance with the prosecutor's request.

■ While we have no doubt of the ability of district judges generally to resist improper comments by the prosecutor to the press, and specifically the ability of the district judge in this case to confine himself to the record, we disapprove of the prosecutor making out-of-court presentence comments to the press regarding a recommended punishment or a characterization of the defendant which goes beyond the evidence theretofore adduced at trial. It is not enough that the court was invulnerable to what was said; there is a duty on the part of counsel not to tempt that invulnerability.

## VI.

Finally, defendant advances the novel contention that his right to due process of law was denied because the government declined to grant immunity to a defense witness who invoked the privilege against self-incrimination and declined to testify. Defendant constructs an elaborate argument as to how he was prejudiced, but the argument fails because the record does not show that the grant of immunity was requested.

■ The identity of a witness, Odel Griffin Coffey, Jr. (Schoolboy), was disclosed in the testimony of government witnesses. Called to the stand by defendant and having had his fifth amendment rights explained, "Schoolboy" declined to testify. When defense counsel suggested that "Schoolboy's" declination was due to his lack of immunity, "Schoolboy" was asked if he would testify if he were granted immunity, even though the government had made known its firm refusal to grant immunity to him. To this question, "Schoolboy" also invoked his right against self-incrimination. Defense counsel did not request a grant of immunity and withdrew the witness. On this record, we therefore conclude that defendant's contention was not preserved for decision.

■ We decline to pass on defendant's contention under the "plain error" rule. If a motion to grant immunity or to require the government to grant immunity had been made to the district judge, he undoubtedly would have required defense counsel to make a proffer of the witness' testimony or at least to provide some relatively precise indication of what was hoped to be proved by it. Thus, defense arguments that immunity for defense witnesses in a particular case was necessary to protect the reliability of the trial as a mechanism for ascertaining the truth, or that the absence of defense immunity in the particular case denied the defendant a fair trial, or that defense immunity was necessary under a due process fairness principle if prosecutorial immunity was accorded, could be evaluated. In addition, proffered testimony or some equivalent substitute would provide a basis for understanding and evaluating the prosecutor's argument that, upon the subsequent trial of the defense witness, it would be impossible to prove that the government's evidence was free of taint as is required under the controlling use immunity standard. Absent proffered testimony or its equivalent, we would be required to decide these issues in a factual vacuum without the views of the district judge on the credibility and importance of the defense witness' testimony in the context of the whole case. Because the issue is not ripe for decision, we decline to explore the issue of defense immunity under the "plain error" rule.

Since we find no reversible error, the judgments are

Affirmed.